ALLIANCE GROUP, INC., Appellee,

v.

ROSENFIELD, Appellant.

ROSENFIELD, Appellant,

v.

GROESCHEN, Appellee.

[Cite as *Alliance Group, Inc. v. Rosenfield* (1996), 115 Ohio App.3d 380.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–960010.

Decided Oct. 23, 1996.

382

*Keating, Ritchie, Norwine & Swick* and *Kevin C. McDonough,* for appellees.

*Robbins, Kelly, Patterson & Tucker* and *Randy J. Blankenship,* for appellant.

PAINTER, Judge.

## I. Facts

Anne Groeschen, the defendant-appellee in case No. 95CV–22144 ("case two"), is the president of Alliance Group, Inc. ("Alliance"), the plaintiff-appellee in case No. 95CV–15891 ("case one"). Alliance places technical service employees with companies that require technical services. Daniel W. Rosenfield, the defendant-appellant in case one and the plaintiff-appellant in case two, is a technical service employee who entered a contract with Alliance to provide services for Procter & Gamble ("P & G"). The contract required Alliance to pay Rosenfield $20 per hour for working up to forty hours per week, and $30 per hour for any hours worked over forty hours per week. Rosenfield alleges that he worked forty-five hours per week in November and December 1994. Alliance allegedly paid Rosenfield for only twenty hours per week over that period. Rosenfield alleges that he was entitled to wages of $4,400, including overtime pay of $1,200. Alliance denies these allegations.

Rosenfield alleges that he quit over Alliance's refusal to pay these wages. Alliance alleges that Rosenfield requested an advance on his pay, and on the same day informed Alliance that he was terminating his relationship with Alliance. Rosenfield then began to work for P & G directly. Rosenfield alleges that Groeschen told P & G that Rosenfield was a "threat" to P & G and it was "dangerous" for P & G to allow Rosenfield on the premises. Groeschen allegedly

told P & G that Rosenfield could not legally work at P & G's plant. Groechen allegedly made these statements to Rosenfield's supervisor and then in a letter to P & G's legal counsel. Subsequently, P & G terminated Rosenfield's employment.

Alliance filed a complaint in the Small Claims Division of the Hamilton County Municipal Court for breach of contract based on Rosenfield's termination of his relationship with Alliance. Groeschen represented Alliance pursuant to R.C. 1925.17, which permits a nonattorney to represent a corporation in small claims court. Rosenfield counterclaimed for breach of contract, violation of the Fair Labor Standards Act ("FLSA"), violation of R.C. 4111.01 for lost wages, and defamation and tortious interference with a business relationship for the comments made to P & G. The small claims division removed the case to municipal court, because the counterclaims exceeded the small claims jurisdictional limit. Rosenfield then filed a separate action against Groeschen individually, making the same allegations as those in his counterclaims.

Once the case was in municipal court, R.C. 1925.17 was no longer applicable. The trial court ordered Alliance to retain counsel for the first case. After several continuances, Alliance still failed to retain counsel to advance its claims. Rosenfield filed a motion to dismiss Alliance's original complaint and a motion for default judgment on the counterclaims because Alliance failed to file an answer and failed to obtain counsel. Rosenfield also moved for default judgment on his claims against Groeschen upon her failure to answer Rosenfield's complaint in the second case.

The court ordered Alliance to obtain counsel to avoid dismissal and default judgment, and continued the case. Just before the parties were scheduled to appear, Groeschen called Rosenfield's counsel to inform him that her attorney was out of town and unavailable for the appearance; however, she did not notify the court. At the scheduled time of the hearing in case one, Groeschen again appeared on behalf of Alliance, and the trial court granted Rosenfield's motions, dismissing Alliance's claims against Rosenfield and entering a default judgment in favor of Rosenfield on his claims against Alliance. Rosenfield obtained a default judgment against Groeschen separately in case two, allegedly without her knowledge. He then attached in excess of $10,000 in Alliance's and Groeschen's bank accounts, and approximately $19,000 in funds held by P & G.

Upon finally retaining legal counsel, and after the garnishments obtained sufficient funds to satisfy the judgments, Alliance and Groeschen filed motions for a stay of the proceedings and for relief from default judgment with regard to both cases. At that point, the two cases were consolidated by an agreed entry. The parties further agreed that all funds held by the court in excess of $12,500 would be released to Alliance and Groeschen.

After a hearing on the motions for relief from the default judgments, the trial court vacated the judgments pursuant to a written opinion, holding that both judgments were void. Rosenfield has appealed this decision, alleging in two assignments of error that the trial court erred by (1) vacating the default judgment on the counterclaims in case one and (2) vacating the judgment in case two.[1]

## II. Subject–Matter Jurisdiction in Case One Under R.C. 1925.17

In case one, the trial court held that the default judgment was void because the court lacked subject-matter jurisdiction. The court held that R.C. 1925.17 was unconstitutional; therefore, Alliance's complaint was a nullity, and the court had no authority to proceed in this case.

 Rosenfield argues that Alliance is estopped to challenge the constitutionality of R.C. 1925.17. As a general proposition, Alliance might be estopped; however, subject-matter jurisdiction is never waived, and remains a question of law for the trial court. See *Goldstein v. Christiansen* (1994), 70 Ohio St.3d 232, 638 N.E.2d 541. So even though, as a general principle, a trial court should decide constitutional issues only when they are squarely presented, in cases where the constitutional issue governs subject-matter jurisdiction, there is no other resolution possible.[2]

 Rosenfield next argues that Alliance was not prejudiced by the operation of R.C. 1925.17, but that issue is of no importance when examining whether the trial court has subject-matter jurisdiction. Courts generally have authority to determine their own subject-matter jurisdiction. See, *e.g., Goldstein, supra.* In this case, the trial court reviewed the constitutionality of R.C. 1925.17 to determine whether it had subject-matter jurisdiction.

R.C. 1925.17 permits any salaried employee of a corporation that is a party to a contract action in small claims court to appear and present the corporation's claim or defense, provided that the employee does not engage in cross-examination, argument, or other acts of advocacy. In *Washington Cty. Dept. of Human Serv. v. Rutter* (1995), 100 Ohio App.3d 32, 651 N.E.2d 1360, the Fourth District Court of Appeals held R.C. 1925.18, a parallel provision to R.C. 1925.17, discussed below, unconstitutional. Judge Stephenson stated:

"The judicial power of this state is vested in the courts. See Section 1, Article IV, Ohio Constitution. The Ohio Supreme Court is granted authority over

---

1. We *sua sponte* remove this case from the accelerated calendar.

2. Therefore, the proper analogy would be that Alliance thought it had cake, but there was no cake, rather than Rosenfield's argument that Alliance "cannot have [its] cake and eat it" too.

admission to the practice of law, the discipline of persons so admitted, and all other matters relating to the practice of law in this state. Section 2(B)(1)(g), Article IV, Ohio Constitution. *That body is also the branch of government which promulgates the rules of practice and procedure before the courts of the state.* Section 5(B), Article IV, Ohio Constitution. This is a broad grant of authority and *the Supreme Court has consistently held that it alone has the inherent power to regulate, control, and define the practice of law in Ohio.* See, generally, *State ex rel. Green v. Brown* (1962), 173 Ohio St. 114, 18 O.O.2d 361, 180 N.E.2d 157 at paragraphs one and two of the syllabus; *Judd v. City Trust & Savings Bank* (1937), 133 Ohio St. 81, 10 O.O. 95, 12 N.E.2d 288, at paragraph one of the syllabus." (Emphasis added.)

Section 1, Article IV of the Ohio Constitution vests the judicial power of the state in a supreme court, courts of appeals, courts of common pleas and divisions thereof, and such other courts inferior to the Supreme Court as may be established by law or, in this case, the General Assembly. Section 5(A)(1), Article IV gives the Supreme Court of Ohio "general superintendence over *all* courts in the state." Section 5(A)(1) goes on to state: "Such general superintending power shall be exercised by the chief justice in accordance with rules promulgated *by the supreme court.*" (Emphasis added.)

■ Section 5(B) states: "The supreme court shall prescribe rules governing practice and procedure in *all* courts of the state * * *. Courts may adopt additional rules concerning local practice in their respective courts which are not inconsistent with the rules promulgated by the supreme court." There is no provision in the constitution vesting any authority in the General Assembly, nor is there any inherent power to establish separate or additional rules for courts created by the General Assembly. The power granted to the Supreme Court governs the practice and procedure of *all* courts in the state, regardless of whether they are constitutionally created or legislatively created.

The Ohio Supreme Court has held that the unauthorized practice of law is not permitted. *In re Unauthorized Practice of Law in Cuyahoga Cty.* (1963), 175 Ohio St. 149, 23 O.O.2d 445, 192 N.E.2d 54; Gov.Bar.R. VII. The Ohio Supreme Court has defined the unauthorized practice of law to be "the rendering of legal services for another by any person not admitted to practice in Ohio under Rule I and not granted active status under Rule VI or certified under Rule II, Rule IX, or Rule XI of the Supreme Court Rules for the Government of the Bar of Ohio." Gov.Bar R. VII, Section 2(A).

■ The Ohio Supreme Court has determined that the practice of law is not limited to "the conduct of cases in court. It embraces the *preparation of pleadings and other papers incident to actions and special proceedings and the management of such actions and proceedings on behalf of clients before judges*

*and courts.*" (Emphasis added.) *Land Title Abstract & Trust Co. v. Dworken* (1934), 129 Ohio St. 23, 1 O.O. 313, 193 N.E. 650, paragraph one of the syllabus. These encompass the activities that Groeschen has conducted on behalf of her corporation, Alliance. The preparation and filing of the small-claim complaint and the management of that legal action may not be done by a layperson. Judge Stephenson wrote that "[t]he provisions of R.C. 1925.18 that would permit [the layperson representing her agency] to engage in such conduct are unconstitutional." *Washington Cty. Dept. of Human Serv.*, 100 Ohio App.3d at 36, 651 N.E.2d at 1363. The only distinction between R.C. 1925.18 in *Washington Cty.* and R.C. 1925.17 here is that R.C. 1925.18 ostensibly permits a layperson to represent her government agency, while R.C. 1925.17 ostensibly permits a layperson to represent her corporation.

Separation of powers is "embedded in the entire framework of those sections of the Ohio Constitution that define the substance and scope of powers granted to the three branches of state government." *S. Euclid v. Jemison* (1986), 28 Ohio St.3d 157, 159, 28 OBR 250, 251, 503 N.E.2d 136, 138. Because Section 5, Article IV of the Ohio Constitution confers exclusive powers regarding any and all rules governing practice and procedure in *all* courts of the state, we agree with Judge Stephenson's decision in *Washington Cty.* that the General Assembly may not usurp these constitutionally granted functions, even for small claims court, and that R.C. 1925.17, like R.C. 1925.18, is unconstitutional, insofar as it allows the preparation of complaints or management of legal actions by laypersons on behalf of a corporation.

Rosenfield asserts that even if the statute is unconstitutional, the counterclaims remained unaffected by the proper dismissal of the complaint and were subject to the entry of a default judgment under Civ.R. 55(A). Conversely, the trial court held that the complaint itself was void, and the court never had jurisdiction over the complaint or the counterclaims.

R.C. 4705.01 states in part:

"No person shall be permitted to practice as an attorney and counselor at law, or to commence, conduct, or defend any action or proceeding in which he is not a party concerned, either by using or subscribing his own name, or the name of another person, unless he has been admitted to the bar by order of the supreme court in compliance with its prescribed rules."

The Ohio Supreme Court has stated that any filing by a nonattorney on a corporation's behalf is a nullity and may be stricken from the record. *Union Sav. Assn. v. Home Owners Aid* (1970), 23 Ohio St.2d 60, 52 O.O.2d 329, 262 N.E.2d 558. See, also, *Palmer v. Westmeyer* (1988), 48 Ohio App.3d 296, 549 N.E.2d 1202. There is some question as to the legal effect of such a complaint in the situation where a counterclaim has been filed. We have been unable to

discover any Ohio cases dealing with this precise issue. In *Washington Cty. Dept. of Human Serv., supra,* the court held that the proper remedy for a complaint filed by a nonattorney is dismissal, which would imply that the complaint is subject to dismissal, but perhaps valid in the interim.

Complaints that are validly filed but do not confer subject-matter jurisdiction over the action are voidable—they can be dismissed, or any defect in the complaint may be corrected by an amended complaint. Civ.R. 12(B)(1). However, a null and void complaint cannot be corrected—it is null and void. The only way to correct this defect is the filing of an entirely new complaint. We believe that the supreme court's reference to the complaint as a "nullity" to be dicta and not intended to be a rule in a case such as ours. If a complaint is void, then the action is never legally commenced *by that complaint.* Even if the complaint were void rather than voidable, we see no reason that a "validly filed counterclaim" in this unique situation cannot serve as a complaint initiating the action. Civ.R. 3(A). A counterclaim, properly filed and served prior to the dismissal of the complaint, that states a legally sufficient basis to confer jurisdiction on the court survives the dismissal. Civ.R. 41(A)(1)(a); *Holly v. Osleisek* (1988), 40 Ohio App.3d 90, 531 N.E.2d 766.

A complaint, like a counterclaim, need only contain a short and plain statement of the claim showing that the party is entitled to relief. Civ.R. 8(A)(1). The only additional requirement for a complaint to commence an action is service of process. Civ.R. 3(A).

In this case, the counterclaims contained a short, plain statement of various claims demonstrating that Rosenfield was potentially entitled to relief. Groeschen's appearance in court on behalf of her corporation and acknowledgement of the counterclaims served to submit Alliance to the personal jurisdiction of the court and waive the requirement for proper service under Civ.R. 4.1. Alliance is now estopped from asserting a personal-jurisdiction defense claiming that Groeschen did not receive proper service on the counterclaims that, in effect, acted as a complaint.

Accordingly, the trial court maintained jurisdiction over the counterclaims and validly granted default judgment in case one. That default judgment should not later have been set aside. For this reason, we sustain the first assignment of error.

### III. Groeschen's Appearance in Case Two

In case two, Rosenfield did not serve written notice on Groeschen before obtaining a default judgment. Rosenfield argues that Groeschen's appearance on behalf of Alliance in case one did not constitute an appearance on her own behalf

in case two, even though the allegations by Rosenfield in his counterclaims in case one were essentially identical to his allegations against Groeschen in case two; therefore, the trial court erred in vacating the default judgment entered in case two.

Civ.R. 55(A) requires, in part:

"If the party against whom judgment by default is sought has appeared in the action, he (or, if appearing by representative, his representative) shall be served with written notice of the application for judgment at least seven days prior to the hearing on such application."

Therefore, the only question presented is whether Groeschen's actions in this litigation could constitute an appearance in case two for the purposes of avoiding default judgment.

The trial court hinged its decision upon a communication between Groeschen and Rosenfield's counsel, rather than Groeschen's ill-fated presence in municipal court on behalf of Alliance in case one. The trial court found that the communication "concerned both cases" and concluded that the communication constituted an appearance in case two.

 Groeschen argues that *Baines v. Harwood* (1993), 87 Ohio App.3d 345, 622 N.E.2d 372; *Koob v. Rue* (1992), 73 Ohio App.3d 418, 597 N.E.2d 550; and *Gagliardi v. Flowers* (1984), 13 Ohio App.3d 238, 13 OBR 290, 468 N.E.2d 933, support her position that she made an appearance in case two. However, in *Baines*, the communication was in regard to settlement of the claims against the defendant. In this case, the communication was a phone call by Groeschen to advise Rosenfield's attorney that her attorney would not be able to attend the case management conference *in case one*. We fail to see how the trial court found that this phone call was in any way connected to case two. In *Koob* and *Gagliardi*, the defendant made an unrepresented, but actual, appearance at the first scheduled trial date, prior to the default judgment. Here, no such appearance was ever possible in case two. Because Groeschen's presence in court was *on behalf of Alliance* in case one, her presence was not an appearance in case two. *Sexton v. Sugar Creek Packing Co.* (1974), 37 Ohio St.2d 58, 66 O.O.2d 161, 307 N.E.2d 541.

 In *Hrabak v. Collins* (1995), 108 Ohio App.3d 117, 670 N.E.2d 281, discretionary appeal not allowed (1996), 76 Ohio St.3d 1405, 666 N.E.2d 565, the Eighth District Court of Appeals held that "private communication between counsel, not part of the record in the case, is of no legal force and effect, and it would be unwarranted to raise these kinds of communications to the level of pleadings." But, see, *Columbus Mgmt. Co., infra.* We agree with the *Hrabak* court. Civ.R. 55(A), while liberally construed against default judgment, requires

seven days' notice to Groeschen only if she "appeared in the action." An appearance is ordinarily made when a party comes into court by some overt act of that party that submits a presentation to the court. *Case v. Case* (1955), 70 Ohio Law Abs. 2, 124 N.E.2d 856. See, also, *Columbus Mgmt. Co. v. Nichols* (Aug. 4, 1992), Franklin App. No. 92AP–191, unreported, 1992 WL 193694. Groeschen made an affirmative act when she called Rosenfield's attorney, but such a call has no bearing on any presentation to the court in case two.

A telephone call between parties would not constitute an appearance unless circumstances give the call some legal effect. For example, in *AMCA Internatl. Corp. v. Carlton* (1984), 10 Ohio St.3d 88, 10 OBR 417, 461 N.E.2d 1282, the telephone call manifested an intention to defend the action, and the Ohio Supreme Court held that this call was legally sufficient to be an appearance.

Groeschen's call had no bearing whatsoever on case two, merely informing Rosenfield's counsel that her counsel was unavailable for a court appearance in case one. This call did not constitute an appearance in case two. Without making an appearance, Groeschen was not entitled to seven days' notice before default judgment was entered against her.[3] Civ.R. 55(A).

Accordingly, we sustain the second assignment of error.

## IV. Conclusion

We sustain both assignments of error, reverse the order setting aside the default judgments, and remand the cause to the trial court for proceedings consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

GORMAN, P.J., and SUNDERMANN, J., concur.

---

**3.** We make no judgment whether Groeschen should be entitled to relief pursuant to Civ.R. 55(B), as this question is not before us.