### BEATLEY, Appellant,

v.

### BEATLEY, Appellee, et al.

Beatley, Appellee,

v.

Beatley, Appellant et al.

[Cite as *Beatley v. Beatley,* 160 Ohio App.3d 600, 2005-Ohio-1846.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

Nos. 04AP–515 and 04AP–516.

Decided April 21, 2005.

602

Fisher & Skrobot, L.L.C., David A. Skrobot and Brett Sheraw, for plaintiff, Jack S. Beatley.

Chester, Willcox and Saxbe, L.L.P., Eugene B. Lewis and Gerhardt A. Gosnell II, for defendant, Colleen S. Beatley.

PETREE, Judge.

{¶ 1} Both plaintiff, Jack Beatley, and defendant, Colleen Beatley (n.k.a. Colleen Block), appeal from a judgment of the Franklin County Court of Common Pleas, which ruled upon defendant's counterclaims against plaintiff.[1]

---

1. Although both parties refer to a cross-appeal, two separate notices of appeal were filed by the parties, each being assigned a separate case number. The appeals were consolidated by entry filed on May 24, 2004.

For the following reasons, the judgment is affirmed in part and reversed in part, and the matter is remanded to that court for further proceedings.

{¶ 2} Plaintiff and defendant were married on March 7, 1992. On that same day, but before the wedding, the parties executed an antenuptial agreement.[2] On December 2, 1994, defendant filed a complaint for divorce against plaintiff in the Franklin County Court of Common Pleas, Division of Domestic Relations. Also on December 2, 1994, the court issued a restraining order against plaintiff, which provided:

It is therefore ordered, adjudged and decreed that the [plaintiff] be and he hereby is restrained and enjoined as follows:

1. From directly or indirectly selling, transferring, giving away, destroying, removing, encumbering, disposing of, or lessening the value of, or in any manner changing or secreting property or assets in which Plaintiff has or claims any interest including, but not limited to, real estate * * *.

{¶ 3} Upon written motion of plaintiff requesting specific relief from the December 2, 1994 restraining order, the domestic court, on April 12, 1995, issued a judgment entry that provided:

It is therefore ordered, adjudged and decreed that the Temporary Restraining Order entered upon the journal on December 2, 1994 is modified with regard to provision one (1) as follows:

That the [plaintiff], Jack Kevin Beatley be permitted to transfer for value, encumber, refinance with any financial institution, individuals or entities his real estate interests and their corresponding financial responsibility as the same would relate to the ordinary course of his business as a real estate developer in central Ohio.

{¶ 4} On December 14, 1998, defendant voluntarily dismissed her complaint for divorce pursuant to Civ.R. 41(A). On the same day, defendant initiated a divorce proceeding in Collier County, Florida. The marriage of plaintiff and defendant ended on March 27, 1998, by an in rem final judgment of dissolution of marriage in the Circuit Court of the Twentieth Judicial Circuit, in Collier County, Florida.

{¶ 5} The matter currently before this court was initiated on February 24, 1998, when plaintiff filed a complaint in the Franklin County Court of Common Pleas against defendant. The complaint sought partition of four properties in which it was alleged that plaintiff and defendant each owned an undivided one-half interest. The four properties at issue in this case are 5900 Dublin Road, 6395 Chippenhook Court, 164 East 13th Avenue, and 226 East 14th Avenue.

---

2. The antenuptial agreement was admitted into evidence in the trial court as a joint exhibit.

{¶ 6} On May 12, 1998, defendant filed an answer and counterclaim. Defendant asserted claims for breach of contract and requested a declaratory judgment. Defendant alleged that plaintiff had breached the antenuptial agreement.

{¶ 7} In July 1998, plaintiff filed a motion to dismiss defendant's counterclaim. On January 26, 1999, the trial court overruled this motion. In its decision, the trial court determined that the antenuptial agreement between the parties was valid and enforceable by virtue of an August 6, 1997 decision and entry of the Franklin County Court of Common Pleas, Division of Domestic Relations.

{¶ 8} On February 11, 1999, plaintiff filed a reply to defendant's counterclaim and a motion for partial summary judgment. The motion requested partition of the four properties at issue. The trial court denied plaintiff's February 11, 1999 motion for partial summary judgment.

{¶ 9} On February 26, 2001, plaintiff dismissed his complaint pursuant to Civ.R. 41.

{¶ 10} On January 7, 2002, the trial court determined that "the legal and equitable relief necessary to separate the financial dealings of the parties is not possible as the pleadings currently stand." The trial court accordingly instructed defendant to amend her answer and counterclaim "to include, *inter alia*, an action for partition, or, in the alternative, dismiss the instant action and file a new action which would include, *inter alia*, an action for partition."

{¶ 11} On January 23, 2002, plaintiff filed a motion for leave to file an amended complaint.

{¶ 12} On February 1, 2002, defendant filed an amended counterclaim against plaintiff as well as a third-party complaint.[3] The amended counterclaim asserted claims for declaratory judgment, breach of contract, entitlement to an accounting and rents, and partition. Defendant sought damages, specific performance, and partition of the properties.

{¶ 13} On March 5, 2002, plaintiff filed a responsive pleading to defendant's February 1, 2002 amended counterclaim. In it, plaintiff asserted 15 causes of action against defendant. Each cause of action related to at least one of the four properties at issue in this litigation.

{¶ 14} On March 7, 2002, the trial court denied plaintiff's January 23, 2002 motion for leave to file an amended complaint.

{¶ 15} On March 20, 2002, defendant filed a motion to strike plaintiff's claims or counterclaims first filed against her in the March 5, 2002 pleading. On April 4, 2002, plaintiff filed a motion for an order deeming defendant's counterclaim and

---

**3.** The third-party complaint involved potential lienholders on the properties at issue.

amended counterclaim to be the complaint and designating plaintiff's responsive pleading as a counterclaim in this action. On August 29, 2002, the trial court sustained defendant's March 20, 2002 motion to strike and denied plaintiff's April 4, 2002 motion to deem defendant's counterclaim and amended counterclaim to be the complaint. In its August 29, 2002 decision and entry, the trial court stated, "Plaintiff filed the instant matter as a partition action and at the eleventh hour dismissed his Complaint, which left Defendant's Counterclaim to be independently adjudicated. Therefore, the Court believes this matter is, procedurally, exactly as Plaintiff intended it to be when he dismissed his Complaint."

{¶ 16} Trial was held on this matter on July 28, 29, 30, and 31 and August 4, 2003. Four witnesses testified at trial. The witnesses were plaintiff, defendant, and their respective economic experts.

{¶ 17} On April 15, 2004, the trial court rendered its decision. Regarding the 5900 Dublin Road property, the trial court determined that plaintiff was not obligated to pay defendant $125,000, because he had not "to date" breached the antenuptial agreement.

{¶ 18} The trial court also stated, "Equity requires Colleen be responsible for half of the debt and expenses related to the maintenance of 5900 Dublin Road from the date of their marriage to the present. To hold otherwise would result in Colleen being unjustly enriched at Jack's expense without making compensation."

{¶ 19} With respect to the 6395 Chippenhook, 164 East 13th Avenue and 226 East 14th Avenue properties, the trial court concluded that defendant has an undivided one-half interest as a tenant in common with plaintiff as to each of those properties.

{¶ 20} Plaintiff appeals from this judgment, assigning the following seven assignments of error:

Assignment of Error Number One

The trial court acted unreasonably, arbitrarily and abused its discretion by denying appellant's motion for leave to file an amended complaint because such an amendment was necessary in order for the trial court to render the full legal and equitable relief necessary to separate the financial dealings of the parties and the denial of appellant's motion unfairly prejudiced appellant's ability to obtain the relief and remedies to which he may have been entitled under Ohio law.

Assignment of Error Number Two

The trial court acted unreasonably, arbitrarily and abused its discretion by granting appellee's motion to strike the claims and/or counterclaims filed in appellant's March 4, 2002, responsive pleading because the grant of appellee's

motion unfairly prejudiced appellant's ability to obtain the relief and remedies to which he may have been entitled under Ohio law.

Assignment of Error Number Three

The trial court acted unreasonably, arbitrarily and abused its discretion by denying appellant's motion to deem appellee's counterclaim and amended counterclaim as the complaint in this matter and designating appellant's responsive pleading as the complaint because denying appellant's motion unfairly prejudiced appellant's ability to obtain the relief and remedies to which he may have been entitled under Ohio law.

Assignment of Error Number Four

The trial court's April 15, 2004 decision and entry holding that appellee had an undivided one-half interest as a tenant in common in 226 East 14th Avenue was against the manifest weight of the evidence because 226 East 14th Avenue was acquired solely by means of appellant's separate, non-marital property and the antenuptial agreement entered into between the parties stated that property acquired jointly by means of the separate, non-marital property of a party remained the separate, non-marital property of that party.

Assignment of Error Number Five

Assuming, arguendo, that the trial court's April 15, 2004 decision and entry rightfully held that appellee had an undivided one-half interest as a tenant in common in 226 East 14th Avenue, said decision and entry was still against the manifest weight of the evidence because it failed to order appellee to make contribution and reimbursement for one-half of the amount by which the expenses on the property exceeded the income from the date of purchase to the date of trial.

Assignment of Error Number Six

The trial court's April 15, 2004 decision and entry holding that appellee had an undivided one-half interest as a tenant in common in 6395 Chippenhook Court was against the manifest weight of the evidence because 6395 Chippenhook Court was acquired by means of appellee's fraudulent inducement and, as a result, the quit-claim deed allegedly transferring said one-half interest as a tenant in common in the property to appellee is void and of no effect.

Assignment of Error Number Seven

The trial court's April 15, 2004 decision and entry holding that appellee had an undivided one-half interest as a tenant in common in 164 East 13th Avenue was against the manifest weight of the evidence because 164 East 13th Avenue was acquired by means of appellee's fraudulent inducement and, as a result, the quit-claim deed allegedly transferring said one-half interest as a tenant in common in the property to appellee is void and of no effect.

{¶ 21} Defendant also appeals from the trial court's judgment, assigning the following three assignments of error:

I. First Cross–Assignment of Error: The trial court erred as a matter of law and against the manifest weight of the evidence when it ruled that the doctrine of unjust enrichment required cross-appellant to pay one-half the debt and expenses related to the Dublin Road property.

II. Second Cross–Assignment of Error: The trial court erred as a matter of law and against the manifest weight of the evidence when it ruled that cross-appellee did not breach paragraph 3 of the antenuptial agreement.

III. Third Cross–Assignment of Error: The trial court erred as a matter of law and against the weight of the evidence when it ruled that cross-appellant was not entitled to prejudgment interest for breach of paragraph 3 of the antenuptial agreement.

{¶ 22} Plaintiff's first three assignments of error allege that the trial court erred with respect to procedural matters. With respect to these three assignments of error, we review the trial court's decisions under the abuse-of-discretion standard. "Abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140.

{¶ 23} By his first assignment of error, plaintiff argues that the trial court erred in denying his motion for leave to file an amended complaint. Civ.R. 15(A) provides that a party may amend his pleading by leave of court and that leave of court "shall be freely given when justice so requires."

{¶ 24} In February 2001, plaintiff voluntarily dismissed his complaint pursuant to Civ.R. 41. Subsequently, in January 2002, plaintiff moved for leave to file an amended complaint. In its March 7, 2002 decision, the trial court reasoned that plaintiff had no complaint pending that he could amend, as he had voluntarily chosen to dismiss it. The trial court held, "There is nothing in the Civil Rules which permits a party to voluntarily dismiss a Complaint and then 'resurrect' it in the action in which it was dismissed." The trial court accordingly denied his motion to amend his complaint. Notwithstanding plaintiff's arguments that he was prejudiced by the trial court's denial of his motion to amend his complaint, we concur in the analysis of the trial court and thus conclude that the trial court did not abuse its discretion in denying plaintiff's January 2002 motion to amend his complaint. Consequently, we overrule plaintiff's first assignment of error.

{¶ 25} For purposes of clarity, we will address plaintiff's second and third assignments of error together. In his second assignment of error, plaintiff asserts that the trial court erred in granting defendant's March 20, 2002 motion

to strike plaintiff's claims or counterclaims first filed against defendant in plaintiff's March 5, 2002 pleading. Plaintiff argues in his third assignment of error that the trial court erred in denying his motion to deem defendant's counterclaim and amended counterclaim to be the complaint in this matter and permit plaintiff to file a counterclaim to the complaint.

{¶ 26} In its August 29, 2002 decision, the trial court sustained defendant's March 20, 2002 motion to strike and denied plaintiff's April 4, 2002 motion to deem defendant's counterclaim and amended counterclaim to be the complaint. In view of the record in this case, we hold that the trial court did not abuse its discretion with respect to its rulings on these motions.

{¶ 27} This matter originally began when plaintiff filed a partition action with respect to the four properties at issue. Over two years after defendant filed her initial counterclaims, plaintiff voluntarily dismissed his partition complaint, pursuant to Civ.R. 41. As stated above, after this voluntary dismissal, the trial court determined on January 7, 2002, by journal entry, that "the legal and equitable relief necessary to separate the financial dealings of the parties is not possible as the pleadings currently stand," and it accordingly instructed defendant to amend her answer and counterclaim "to include, *inter alia,* an action for partition, or, in the alternative, dismiss the instant action and file a new action which would include, *inter alia,* an action for partition." On February 1, 2002, defendant filed an amended counterclaim, which included partition claims with respect to the four properties at issue in this appeal. In plaintiff's March 5, 2002 responsive pleading to defendant's February 1, 2002 pleading, he asserted 15 claims against defendant.

{¶ 28} Plaintiff argues that "when a complaint is no longer pending in a case, a validly filed counterclaim can be deemed to serve as a complaint initiating the action," citing *Alliance Group, Inc. v. Rosenfield* (1996), 115 Ohio App.3d 380, 685 N.E.2d 570, and *Holly v. Osleisek* (1988), 40 Ohio App.3d 90, 531 N.E.2d 766. *Alliance Group* and *Holly* both support the proposition that a "counterclaim, properly filed and served prior to the dismissal of the complaint, that states a legally sufficient basis to confer jurisdiction on the court survives the dismissal." *Alliance Group,* 115 Ohio App.3d at 388, 685 N.E.2d 570, citing Civ.R. 41(A)(1)(a) and *Holly.* However, we find nothing in *Alliance Group* and *Holly* to support plaintiff's particular argument regarding whether the "counterclaim can be deemed to serve as a complaint initiating the action."

{¶ 29} Based on the foregoing, including our review of this case's procedural history, we conclude that the trial court did not abuse its discretion in sustaining defendant's March 20, 2002 motion to strike and denying plaintiff's April 4, 2002 motion to deem defendant's counterclaim and amended counterclaim to be the

complaint. Accordingly, we overrule plaintiff's second and third assignments of error.

{¶ 30} By his fourth assignment of error, plaintiff argues that the trial court erroneously held that defendant has an undivided one-half interest as a tenant in common in the real property at 226 East 14th Avenue. According to plaintiff, the property was acquired solely by means of his separate, nonmarital property, and pursuant to the antenuptial agreement, he is the sole owner of the property at 226 East 14th Avenue.

{¶ 31} Defendant argues that the trial court's conclusion that 226 East 14th Avenue "is joint property under subparagraph 7.a" of the antenuptial agreement is not against the manifest weight of the evidence. Defendant points to the fact that she and plaintiff took title to 226 East 14th Avenue as tenants in common by sheriff's deed and that the sheriff's office receipt indicates that the deposit of $8,250 was received from plaintiff and defendant.

{¶ 32} Regarding the 226 East 14th Avenue property, the trial court reasoned that because plaintiff and defendant jointly acquired the property, it is joint property under subparagraph 7.a of the antenuptial agreement. Subparagraph 7.a provides, "The real and personal property that the parties acquire jointly during their marriage, *except as may be generated from Non–Marital Property,* shall be deemed 'Marital Property,' unless specifically excluded by a provision of this Agreement." Therefore, if 226 East 14th Avenue was jointly acquired solely with plaintiff's separate, nonmarital funds, then pursuant to the antenuptial agreement, the property is his separate nonmarital property.

{¶ 33} At trial, the parties disputed whether a $5,000 payment from defendant to plaintiff, which was made on the day before the closing for the purchase of 226 East 14th Avenue, was a contribution toward the purchase of the property. During opening statements at trial, defendant's counsel conceded that defendant had made no financial contributions toward the 226 East 14th Avenue property beyond the disputed $5,000. However, the trial court determined that this payment was a repayment of a loan and, therefore, was not a contribution toward the purchase of the property. This finding was supported by sufficient evidence admitted at trial. The trial court also determined that plaintiff had paid all mortgage payments as to the property, without contribution from defendant. The parties stipulated that plaintiff had paid the required deposit for the purchase of the property at the sheriff's sale.

{¶ 34} Therefore, considering the trial court's factual determination that the disputed $5,000 was a loan, which was supported by sufficient evidence, we find that the evidence reveals that plaintiff paid for the 226 East 14th Avenue property without any contribution from defendant. Under the exception con-

tained within subparagraph 7.a of the antenuptial agreement, 226 East 14th Avenue is the separate, nonmarital property of plaintiff. The trial court erroneously held that defendant has an undivided one-half interest as a tenant in common in the real property at 226 East 14th Avenue. Accordingly, we sustain plaintiff's fourth assignment of error.

{¶ 35} Under his fifth assignment of error, plaintiff contends that, even assuming that the trial court did not err in holding that defendant has an undivided one-half interest as tenant in common in 226 East 14th Avenue, it erred by not finding plaintiff to be entitled to contribution and reimbursement for one-half of the amount the expenses exceeded the income of the property. In view of our disposition of plaintiff's fourth assignment of error, his fifth assignment of error is rendered moot.

{¶ 36} Because plaintiff's sixth and seventh assignments of error involve similar issues, we address them together. By his sixth assignment of error, plaintiff argues that the trial court erred in finding that defendant owned a one-half interest as tenant in common in the property at 6395 Chippenhook by virtue of a quitclaim deed because the deed was acquired by defendant's fraud in the inducement. Similarly, in his seventh assignment of error, plaintiff argues that the trial court erred in finding that defendant owned a one-half interest as tenant in common of the property at 164 East 13th Avenue because that property was also acquired by defendant by means of defendant's fraud in the inducement. Plaintiff essentially argues that he was fraudulently induced into transferring interests in the property by defendant's alleged promises of "domestic tranquility." According to plaintiff, domestic tranquility was impossible, and defendant knew this because defendant had retained a domestic-relations attorney.

{¶ 37} Defendant argues that the trial court's determinations with respect to 6395 Chippenhook and 164 East 13th Avenue were not against the manifest weight of the evidence and were not contrary to law.

{¶ 38} Plaintiff acquired 6395 Chippenhook by general warranty deed recorded on August 27, 1992. In October 1992, plaintiff and defendant moved into 6395 Chippenhook. On April 12, 1993, plaintiff executed a quitclaim deed granting an undivided one-half interest in 6395 Chippenhook to defendant. This quitclaim deed was recorded on April 6, 1994. Plaintiff resided at 6395 Chippenhook until about June 1998.

{¶ 39} Plaintiff acquired the 164 East 13th Avenue property by general warranty deed recorded on April 27, 1994. On June 27, 1994, plaintiff executed a quitclaim deed granting an undivided one-half ownership interest in 164 East 13th Avenue to defendant. This deed was recorded on June 27, 1994.

{¶ 40} Plaintiff contends that the transfers to defendant with respect to 6395 Chippenhook and 164 East 13th Avenue were invalid because they were obtained through fraud in the inducement.

{¶ 41} The trial court determined that the evidence did not support a finding that defendant fraudulently induced plaintiff into transferring an undivided one-half interest as a tenant in common in the 164 East 13th Avenue property. The trial court in effect made the same finding as to the 6395 Chippenhook property because it concluded that defendant has an undivided one-half interest as a tenant in common with plaintiff as to that property by virtue of the quitclaim deed. By implication, the trial court rejected the argument that plaintiff had been fraudulently induced to transfer the interest in 6395 Chippenhook. According to plaintiff, those determinations are against the manifest weight of the evidence.

{¶ 42} "Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578, syllabus.

{¶ 43} "In order to prove fraud in the inducement, a plaintiff must prove that the defendant made a knowing, material misrepresentation with the intent of inducing the plaintiff's reliance, and that the plaintiff relied upon that misrepresentation to her detriment." *ABM Farms, Inc. v. Woods* (1998), 81 Ohio St.3d 498, 502, 692 N.E.2d 574, citing *Beer v. Griffith* (1980), 61 Ohio St.2d 119, 123, 15 O.O.3d 157, 399 N.E.2d 1227.

{¶ 44} Plaintiff testified that defendant made numerous requests for him to transfer property to her. Plaintiff characterized defendant's requests for property as relentless. Plaintiff also testified as follows:

Q. Did she provide you in the discussions asking for property with any reason that you needed to transfer this property?

A. Try to have some domestic tranquility at home, you know, just to get her to quit it, to leave us alone so we could be a couple. But there was a reason, there was alternative—or ulterior reason that these were transferred to her.

{¶ 45} According to plaintiff, defendant knew that "domestic tranquility was not possible and that the parties' relationship could not be maintained because she had already retained a domestic relations attorney for the purpose of terminating her marriage." In his reply brief, plaintiff also asserts that the testimony at trial indicated that "so long as Plaintiff transferred properties to Defendant, Defendant promised that she would remain committed to the marriage and the parties would remain a couple." We disagree with this interpretation of the testimony at trial.

{¶ 46} First, there was no testimony that defendant falsely informed plaintiff that she had not retained a domestic relations attorney. Also, plaintiff's argument is premised on the idea that defendant promised that there would be domestic tranquility and that this promise induced him to transfer property to her. However, there is no indication that defendant promised that there would be domestic tranquility if plaintiff transferred property to her. Certainly, plaintiff may have been motivated by a desire to promote domestic tranquility when he transferred property to her. In this sense, he may have been induced to transfer property to her in an attempt to promote domestic tranquility. However, the record does not support a finding that she promised domestic tranquility in exchange for the transfer of real property to her. Thus, there was no knowing, material misrepresentation by defendant regarding whether there would be domestic tranquility if plaintiff transferred property to her, even if she had retained a domestic-relations attorney without his knowledge.

{¶ 47} In view of the evidence at trial, including the joint stipulations, we conclude that the trial court's determinations that defendant has undivided one-half interests in 164 East 13th Avenue and 6396 Chippenhook were not against the manifest weight of the evidence, because defendant acquired her interests in the properties by valid quitclaim deeds. The evidence at trial does not support plaintiff's argument that defendant fraudulently induced him into transferring the interests in these two properties.

{¶ 48} Accordingly, we overrule plaintiff's sixth and seventh assignments of error.

{¶ 49} All three of defendant's assignments of error relate to the Dublin Road property. On the date of the parties' marriage, plaintiff owned 5900 Dublin Road. In June 1992, plaintiff signed a quitclaim deed transferring 5900 Dublin Road to plaintiff and defendant for their joint lives, the remainder to the survivor of them. This quitclaim deed was recorded in November 1995. On August 6, 1997, a letter was sent from defendant's then legal counsel to plaintiff's then legal counsel regarding the Dublin Road property. The letter states:

> This letter shall serve as written demand by Colleen Madden Beatley, pursuant to Paragraph 3(a) of the Antenuptial Agreement, for payment to Ms. Beatley in cash, equal to the calculation as set forth in section 3(b) of the Antenuptial Agreement, but in no event less than $125,000.00 cash for her interest in the Dublin Road property (See Paragraph 3[e].)

{¶ 50} For purposes of clarity, we address defendant's second assignment of error first. Under her second assignment of error, defendant asserts that the

trial court erroneously determined that plaintiff had not breached paragraph 3 of the antenuptial agreement.

{¶ 51} Paragraph 3 of the agreement provides as follows:

*5900 Dublin Road.* Jack currently owns a parcel of real property upon which is constructed a residence located at 5900 Dublin Road, Franklin County, Ohio (hereinafter the "Property") which shall within 30 days * * * of the marriage contemplated by this Agreement be placed in a joint and survivorship deed between Jack and Colleen. The parties anticipate that the existing residence will be remodeled or a new residence will be constructed thereon which the parties will use as their primary residence. * * * In the event of the commencement of an action for divorce, dissolution, annulment or other form of termination of marriage or for legal separation of the parties' marriage, the parties' respective interests in the Property shall be liquidated as follows:

a. Within sixty (60) days of written demand by Colleen or Jack, Jack has the right to purchase Colleen's interest in the Property by having the Property appraised pursuant to the formula in footnote 1. below and by paying to Colleen in cash an amount equal to the calculation as set forth below in b., as if the Property had been sold and the sales price was the appraised price, without deduction, however, for the normal and customary costs of closing. Jack shall close on such purchase within 90 days after exercising such option to purchase.

b. If Jack has not purchased Colleen's interest under a. above, the Property shall be listed within thirty (30) days after expiration of his option in Paragraph 3.a. above. By selling the Property, and after payment of the normal and customary costs of closing and any joint indebtedness thereon, the net proceeds shall be disbursed as follows:

i. the first $125,000.00 to Colleen;

ii. the second $125,000.00 to Jack; and

iii. the remaining balance equally divided between the parties.

* * *

e. Notwithstanding anything to the contrary, in no event shall Colleen receive less than $125,000.00 cash for her interest in the Property and Jack hereby guarantees that she will receive such amount not later than the time provided by the provisions of Paragraph 3.a. or b. above, whichever is applicable. Further notwithstanding anything to the contrary, in the event the Property is listed for sale pursuant to Paragraph 3.b. above and the closing of the sale of the Property does not occur within 12 months after such listing, then Jack shall pay to Colleen $125,000.00 in cash, which payment shall be a debit to Colleen and a credit to Jack with respect to the parties' receipt of proceeds upon ultimate sale of the Property. Colleen shall cooperate with Jack with respect to using the Property as security to obtain a loan for such

$125,000.00 payment, however Colleen shall not be personally liable for payment of such loan.

(Emphasis added.)

{¶ 52} The construction of written contracts is a matter of law. *Alexander v. Buckeye Pipe Line Co.* (1978), 53 Ohio St.2d 241, 7 O.O.3d 403, 374 N.E.2d 146, paragraph one of the syllabus. "Unlike determinations of fact which are given great deference, questions of law are reviewed by a court *de novo.*" *Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm* (1995), 73 Ohio St.3d 107, 108, 652 N.E.2d 684. "The cardinal purpose for judicial examination of any written instrument is to ascertain and give effect to the intent of the parties." *Foster Wheeler Enviresponse, Inc. v. Franklin Cty. Convention Facilities Auth.* (1997), 78 Ohio St.3d 353, 361, 678 N.E.2d 519, citing *Aultman Hosp. Assn. v. Community Mut. Ins. Co.* (1989), 46 Ohio St.3d 51, 53, 544 N.E.2d 920. "The intent of the parties to a contract is presumed to reside in the language they chose to employ in the agreement." *Kelly v. Med. Life Ins. Co.* (1987), 31 Ohio St.3d 130, 31 OBR 289, 509 N.E.2d 411, paragraph one of the syllabus. "Common words appearing in a written instrument will be given their ordinary meaning unless manifest absurdity results, or unless some other meaning is clearly evidenced from the face or overall contents of the instrument." *Alexander,* 53 Ohio St.2d 241, 7 O.O.3d 403, 374 N.E.2d 146, at paragraph two of the syllabus.

{¶ 53} The first sentence in subparagraph 3.e. of the antenuptial agreement guarantees that defendant receive no less than $125,000 for her interest in 5900 Dublin Road, no later than the specified time. This provision is unequivocal with respect to her right to $125,000 in cash for her interest in the Dublin Road property.

{¶ 54} Subparagraph 3.e provides that she receive $125,000 "not later than the time provided by the provisions of Paragraph 3.a. or b. above, whichever is applicable." At first glance, it may seem unclear as to when the $125,000 must have been received by defendant, given that plaintiff did not exercise his option to purchase defendant's interest in the property within 60 days of the August 6, 1997 letter (subparagraph 3.a) and that the property was not listed for sale within 30 days after the expiration of his option in paragraph 3.a (subparagraph 3.b).

{¶ 55} Nevertheless, it was clearly the intent of the parties that, at the latest, defendant was entitled to the $125,000 in cash 12 months plus 90 days after a written demand, such as was made in the August 6, 1997 letter. In reaching this conclusion, we note the provision requiring plaintiff to pay defendant $125,000 in cash if the property is listed pursuant to paragraph 3.b but does not sell within 12 months of being listed. Essentially, this provision clarifies subparagraph 3.b because it specifies what happens if the property does not sell in 12 months, despite being listed for sale. In view of the requirement that plaintiff pay

defendant $125,000 if the property does not sell within 12 months after being listed, the clear intent was that, at the latest, defendant was entitled to $125,000 in cash no later than 12 months plus 90 days after subparagraph 3.a was triggered.

{¶ 56} It is true that the antenuptial agreement did not place an affirmative duty on either party to have the property listed for sale, because it does not specify who shall list the property for sale. Plaintiff contends that the restraining order enjoined him from exercising his option under subparagraph 3.a. Even assuming that plaintiff was unable to exercise his option to purchase defendant's interest in the property or sell the property at the time of defendant's written demand, that fact did not negate his obligation under subparagraph 3.e. to guarantee that defendant receive the $125,000.

{¶ 57} Plaintiff also argues that the antenuptial agreement "intends that any construction or improvement on 5900 Dublin Road will be a joint obligation of the parties." In support of this argument, plaintiff points to the language in the agreement stating that "the parties anticipate that the existing residence will be remodeled or a new residence will be constructed," emphasizing the use of the plural word, "parties." Plaintiff also notes that the agreement provides that in the event the property is sold, "after payment of the normal and customary costs of closing and *any joint indebtedness thereon,* the *net proceeds* shall be disbursed." (Emphasis sic.) Contrary to plaintiff's argument, the use of the phrases "any joint indebtedness" and "parties anticipate" did not place an affirmative duty upon defendant to contribute to any construction or improvement on the Dublin Road property.

{¶ 58} We conclude that plaintiff breached the antenuptial agreement because defendant did not timely receive the $125,000 in cash she was entitled to under the agreement. Once subparagraph 3.a was triggered by the letter from defendant's counsel in August 1997, plaintiff was obligated to pay defendant $125,000 in cash if she had not received the payment by, at the latest, 12 months plus 90 days after the written demand. Plaintiff has breached the antenuptial agreement with respect to the Dublin Road property. Therefore, plaintiff is obligated to pay $125,000 in cash to defendant for her interest in the 5900 Dublin Road property, as she did not receive the $125,000 as required under subparagraph 3.e of the antenuptial agreement.

{¶ 59} Based on the foregoing, we sustain defendant's second assignment of error.

{¶ 60} By her first assignment of error, defendant argues that the trial court erred by requiring her to pay one-half the debt and expenses related to the Dublin Road property. As noted above, the trial court determined that requiring

plaintiff to pay $125,000 without considering the financial obligations plaintiff has undertaken without the assistance of defendant would result in defendant's being unjustly enriched.

{¶ 61} "Unjust enrichment is an equitable doctrine to justify a quasi-contractual remedy that operates in the absence of an express contract or a contract implied in fact to prevent a party from retaining money or benefits that in justice and equity belong to another." *Turner v. Langenbrunner*, Warren App. No. CA2003–10–099, 2004-Ohio-2814, 2004 WL 1197213, at ¶ 38, citing *Univ. Hosp. of Cleveland, Inc. v. Lynch*, 96 Ohio St.3d 118, 2002-Ohio-3748, 772 N.E.2d 105, at ¶ 60. In the case at bar, the valid antenuptial agreement between plaintiff and defendant outlined the parties' rights and obligations regarding the Dublin Road property. Defendant had no obligation under the antenuptial agreement to contribute financially to the construction at 5900 Dublin Road. Moreover, the parties agreed that "[n]otwithstanding anything to the contrary, in no event shall Colleen receive less than $125,000 cash for her interest in the property." Therefore, we conclude that the trial court improperly applied the doctrine of unjust enrichment to this case.

{¶ 62} Additionally, even if the doctrine could apply, any setoff to her interest in the 5900 Dublin Road property, by virtue of imposed indebtedness, would not reduce her entitlement to $125,000 cash for her interest in the property, pursuant to subparagraph 3.e. of the antenuptial agreement.

{¶ 63} Based on the foregoing, we sustain defendant's second assignment of error.

{¶ 64} Finally, defendant contends in her third assignment of error that the trial court erred in finding that she was not entitled to prejudgment interest for a breach of paragraph 3 of the antenuptial agreement.

{¶ 65} Because we have determined that plaintiff breached the antenuptial agreement with respect to the Dublin Road property, we find that defendant is entitled to prejudgment interest pursuant to R.C. 1343.03(A). We remand this issue to the trial court with instructions to calculate the amount of prejudgment interest defendant is entitled to pursuant to R.C. 1343.03(A).

{¶ 66} Accordingly, we sustain defendant's third assignment of error.

{¶ 67} In sum, plaintiff's first, second, third, sixth, and seventh assignments of error are overruled. Plaintiff's fourth assignment of error is sustained, and his fifth assignment of error is rendered moot. All three of defendant's assignments of error are sustained. Accordingly, the judgment of the Franklin County Court of Common Pleas is affirmed in part and reversed in part, and this cause is

**618**

remanded to that court for further proceedings in accordance with law and consistent with this opinion.

> Judgment affirmed in part
> and reversed in part,
> and cause remanded.

LAZARUS and FRENCH, JJ., concur.