OPINION
{¶ 1} This is an appeal by defendant-appellant, Family Medicine Foundation, Inc. ("FMF"), dba The Thomas E. Rardin Family Practice Center, from a judgment of the Franklin County Court of Common Pleas, denying FMF's motion for relief from judgment pursuant to Civ.R. 60(B).
 {¶ 2} On September 22, 1998, plaintiff-appellee, Maria Nicole Bright, filed a medical malpractice action in the Franklin County Court of Common Pleas (case No. 98 CVA09-7342), naming as defendants The Thomas E. Rardin Family Practice Center ("the Practice Center") and three physicians. The complaint alleged that a physician treated appellee at the Practice Center for an ingrown toenail on September 23, 1997. During the procedure, appellee was given the drug lidocaine to numb her foot. Appellee was later informed that the bottle of lidocaine had been contaminated, having been previously used to administer multiple injections to a patient with acquired immune deficiency syndrome ("AIDS"). The complaint alleged causes of action for negligence, loss of enjoyment, lost wages, future wage loss, and loss of chance of survival.
 {¶ 3} Appellee served a copy of the complaint on the Practice Center, located at 2231 North High Street, Columbus. The Practice Center did not file an answer or otherwise enter an appearance. On June 24, 1999, appellee filed a motion for default judgment against the Practice Center, the only remaining defendant after the named physicians were voluntarily dismissed.
 {¶ 4} On July 1, 1999, the trial court granted appellee's motion for default judgment against the Practice Center, and the court assigned the matter to a magistrate to conduct a hearing on the issue of damages. Following a damages hearing, the magistrate issued a decision on December 16, 1999, determining that appellee was entitled to damages in the amount of $978,840.41, encompassing lost wages, future lost wages, medical costs, prescription medication, and pain and suffering. The trial court issued a final judgment on December 21, 1999, adopting the findings of the magistrate and awarding appellee judgment in the amount of $978,840.41.
 {¶ 5} On January 18, 2000, The Ohio State University ("OSU"), the owner of the building in which the Practice Center was located, filed a motion to vacate the default judgment against the Practice Center. Specifically, OSU alleged that the Practice Center was not a legal entity, and that the common pleas court lacked subject-matter jurisdiction to issue a default judgment against an asset owned by OSU. On February 4, 2000, appellee filed a memorandum contra OSU's motion to vacate, asserting that OSU lacked standing as it was not a party to the action, and further arguing that the Practice Center was a fictitious name of FMF. On February 11, 2000, FMF filed a motion to intervene in the action against the Practice Center, asserting that the default judgment was void because it was rendered against a non-entity.
 {¶ 6} On February 8, 2000, appellee filed a motion for examination of judgment creditor, requesting that FMF's statutory agent appear for examination regarding satisfaction of the default judgment. On February 25, 2000, FMF filed a complaint for preliminary and permanent injunctive relief against appellee and her attorneys, in which FMF requested an injunction barring appellee from executing on FMF's assets (case No. 00CVH-02-1619). Appellee subsequently filed an answer and counterclaim. In the counterclaim, appellee requested that the court issue a declaration upholding the legality of the default judgment entered against the Practice Center, and finding that such entity "is a fictitious name for the Family Medicine Foundation, Inc."
 {¶ 7} On June 30, 2000, FMF filed a Civ.R. 60(B) motion to vacate the default judgment entered against the Practice Center in the malpractice action. On August 29, 2000, appellee filed a memorandum contra FMF's Civ.R. 60(B) motion to vacate. On September 28, 2000, FMF filed a motion requesting the trial court exercise its inherent power to vacate the default judgment entered against the Practice Center. The trial court stayed those motions pending the court's decision in FMF's injunction action.
 {¶ 8} By decision filed November 16, 2000, the trial court, in case No. 00CVH-02-1619, found that the default judgment in the medical malpractice action was not void, and that such judgment was enforceable against FMF on the basis that it used the fictitious name of "The Thomas Rardin Family Practice" to carry on its business. In Family Medicine Found., Inc. v. Bright
(June 28, 2001), Franklin App. No. 00AP-1476 ("Bright I"), this court reversed the judgment of the trial court finding that the judgment against the Practice Center was void as being granted against a non-legal entity. On further appeal, the Ohio Supreme Court, in Family Medicine Found., Inc. v. Bright,96 Ohio St.3d 183, 2002-Ohio-4034, ("Bright II"), at ¶ 15, reversed this court's decision holding that R.C. 1329.10(C) "permits a plaintiff to bring suit against a party named only by its fictitious name," and, therefore, rejecting FMF's argument that the default judgment entered against the Practice Center was void.
 {¶ 9} This court subsequently held that the trial court did not lack subject-matter jurisdiction to hear and decide FMF's Civ.R. 60(B) motion on the merits. Bright v. Family MedicineFound., Inc., Franklin App. No. 02AP-1443, 2003-Ohio-6652. Accordingly, the matter was remanded, and the trial court, by decision and entry filed July 14, 2005, denied FMF's motion to vacate filed June 30, 2000, finding that FMF failed to present a meritorious defense or demonstrate excusable neglect.
 {¶ 10} On appeal, FMF sets forth the following three assignments of error for review:
1. The Trial Court erred as a matter of law by overruling Defendant-Appellant's Ohio Civil Rule 60(B) Motion to Vacate Judgment.
2. The Trial Court abused its discretion when overruling Defendant-Appellant's Ohio Civil Rule 60(B) Motion to Vacate Judgment.
3. The Trial Court erred as a matter of law by implicitly overruling Defendant-Appellant's Common Law Motion to Vacate Judgment.
 {¶ 11} FMF's assignments of error are interrelated and will be considered together. FMF generally challenges the trial court's denial of its motions to vacate the default judgment rendered in favor of appellee in her malpractice action.
 {¶ 12} In order to prevail on a motion for relief from judgment, pursuant to Civ.R. 60(B), a movant is required to demonstrate that: (1) the party has a meritorious defense to present if relief is granted; (2) the party is entitled to relief under one of the grounds stated in Civ.R. 60(B)(1) through (5); and (3) the motion is made within a reasonable time, and, where the grounds of relief are Civ.R. 60(B)(1), (2) or (3), not more than one year after the judgment was entered or taken. GTEAutomatic Electric v. ARC Industries (1976), 47 Ohio St.2d 146, paragraph two of the syllabus.
 {¶ 13} The question whether relief should be granted is addressed to the sound discretion of the trial court. RoseChevrolet, Inc. v. Adams (1988), 36 Ohio St.3d 17, 20. An appellate court reviews a trial court's denial of a Civ.R. 60(B) motion under an abuse of discretion standard. Medina Supply Co.,Inc. v. Dig It Foundations, Ltd. (Apr. 3, 2002), Summit App. No. 20685.
 {¶ 14} FMF first argues that it had a meritorious defense because the allegations by appellee in her malpractice action failed to state a claim upon which relief may be granted. Specifically, FMF maintains that the allegation by appellee that she has suffered "great pain of mind and body" is essentially a claim for negligent infliction of emotional distress, i.e., her cause of action is based solely upon her fear of contracting AIDS. Relying upon the Ohio Supreme Court's decision in Heinerv. Moretuzzo (1995), 73 Ohio St.3d 80, FMF asserts that Ohio law does not recognize a claim for negligent infliction of serious emotional distress where such distress is caused by a plaintiff's fear of a non-existent peril.
 {¶ 15} At the outset, we note that FMF, in its June 30, 2000 motion to vacate, argued that it was entitled to relief from the default judgment on the basis of excusable neglect. More specifically, FMF argued that appellee could not knowingly maintain an action against a non-entity; rather, under Ohio law, an action could only be commenced against the user of a trade name or fictitious name.
 {¶ 16} Attached to the motion was the affidavit of attorney Warren M. Enders, who represented one of the named physicians, Dr. Robert Crane, in the 1998 malpractice action filed by appellee. In the affidavit, Enders averred in part that the Practice Center was simply the name of the building where the clinic was conducted, not a legal entity. Enders averred that he later learned the Practice Center was an asset owned by OSU, and that it was operated by FMF to the extent FMF staffed the clinic with physicians, some nurses, and clerical personnel. Enders averred he had "thoroughly reviewed" the entire case, that he had spoken with representatives of FMF about the case, and that he "believe[d] [FMF] does have multiple meritorious defenses" to appellee's complaint, including a statute of limitations defense, insufficiency of process, and failure to state a claim for relief.
 {¶ 17} The trial court, in addressing FMF's claim of a meritorious defense, held that "nowhere in its Motion, Affidavit, or Reply does Family Medicine Foundation discuss the meritorious defenses such as statute of limitations, failure to state a claim, and that no employee of Family Medicine Foundation was involved in the alleged malpractice." The court, in considering the averments in Enders' affidavit, found that FMF failed to set forth operative facts demonstrating a meritorious defense. The court noted that, while Enders averred in general the existence of a statute of limitations defense, the alleged incident of malpractice occurred on September 22, 1997, and appellee filed her malpractice action on September 22, 1998. The court held in part: "It is unclear from the face of the Complaint how such a lawsuit could be barred by the statute of limitations, pursuant to former R.C. 2305.113, and [FMF] does not explain how it forms the basis of a meritorious defense."
 {¶ 18} As noted above, FMF relies upon the Ohio Supreme Court's decision in Heiner, in arguing that appellee failed to state a claim for relief. The syllabus of Heiner states in relevant part: "Ohio does not recognize a claim for negligent infliction of serious emotional distress where the distress is caused by the plaintiff's fear of a nonexistent physical peril."
 {¶ 19} Appellee contends Heiner is distinguishable, as the plaintiff in that case never faced actual physical peril. More specifically, in Heiner, after the plaintiff was initially tested for human immunodeficiency virus ("HIV"), she was informed by a medical center that she had tested positive. Subsequent testing, however, indicated that the plaintiff was HIV negative. In her action against the medical center, the plaintiff alleged she had been negligently diagnosed HIV positive, and sought relief for emotional injuries from the misdiagnosis. Id., at 85. In rejecting the plaintiff's claim, the Supreme Court noted that "the claimed negligent diagnosis never placed [plaintiff] or any other person in real physical peril, since [plaintiff] was, in fact, HIV negative." Id.
 {¶ 20} Appellee argues that, in contrast to the facts ofHeiner, she did not claim malpractice because Dr. Crane misinformed her that she had been injected with HIV-contaminated lidocaine; rather, appellee maintains, she was in fact injected with a contaminated drug and suffered both physical injury and fear of physical consequences resulting from the injection.
 {¶ 21} We agree with appellee that the allegation that she was exposed to the HIV virus through injection with HIV-contaminated lidocaine distinguishes this case from Heiner,
as the allegations by appellee implicate the actual threat of physical harm that was absent in Heiner. See Galland v.Meridia Health Sys., Inc., Summit App. No. 21763,2004-Ohio-1416, at ¶ 14 ("[t]he instant case is easily distinguishable from Heiner in that [appellant] suffered a contemporaneous physical injury when her foot was punctured by the contaminated suture needle and that exposure resulted in the possibility of her contracting the HIV virus from that blood contact"); Murphy v. Abbott Laboratories (E.D.Pa. 1996),930 F.Supp. 1083 (distinguishing cases in which plaintiffs did not suffer exposure to AIDS, but were instead misdiagnosed, court held that plaintiff injected by intravenous needle also used to administer an IV antibiotic to a patient known to have AIDS had cause of action for direct physical injury suffered as well as emotional distress arising from that injury). Accordingly, we find no abuse of discretion by the trial court in the instant case in failing to find FMF had a meritorious defense on the basis that appellee failed to state a claim for relief under the holding in Heiner.
 {¶ 22} As to FMF's remaining claims of a meritorious defense, while a movant need not prove it will prevail on such defense, the movant nevertheless "must allege supporting operative facts with enough specificity to allow the court to decide that the movant has a defense he could have successfully argued at trial."Mattingly v. Deveaux, Franklin App. No. 03AP-793,2004-Ohio-2506, at ¶ 10. The affidavit of Enders, submitted in support of FMF's Civ.R. 60(B) motion, contains a conclusory statement that he had reviewed the case, spoken with representatives of FMF, and held a belief that FMF had several meritorious defenses. Upon review, we agree with the trial court that the materials in support of FMF's motion do not allege operative facts sufficient to establish a meritorious defense. See Jordan v. Sitosky (Jan. 24, 1991), Cuyahoga App. No. 57913 (affidavit from plaintiff's attorney indicating his belief there was a good and meritorious defense insufficient to meet first portion of GTE test).
 {¶ 23} FMF further argues that the trial court was required to grant relief from judgment because the damages awarded under the default judgment were both unwarranted and excessive. FMF notes that the damages award included liquidated and unliquidated amounts. FMF maintains that the amount of unliquidated damages is exorbitant.
 {¶ 24} Civ.R. 55(A) states in part:
* * * If, in order to enable the court to enter judgment or to carry it into effect, it is necessary to take an account or to determine the amount of damages * * *, the court may conduct such hearings or order such references as it deems necessary and proper and shall when applicable accord a right of trial by jury to the parties.
 {¶ 25} In accordance with Civ.R. 55(A), "Ohio courts have determined that a trial court abuses its discretion by not holding a hearing in a default case to determine the amount of unliquidated damages." Lawhorn v. Pirtle (Apr. 17, 1998), Lucas App. No. L-97-1222, fn. 2, citing Kapel v. Ford Motor Co. (July 3, 1997), Geauga App. No. 96-G-2028.
 {¶ 26} In the present case, a magistrate of the trial court conducted a hearing on the issue of damages. In his December 16, 1999 decision, the magistrate made the following findings. Appellee, upon learning of the possibility of being exposed to the AIDS virus, was "terrified for her well being and that of her infant son"; she immediately stopped breast-feeding her son after being informed of the exposure, and she still takes special precautions in caring for him. Appellee has had periodic testing for the AIDS virus since September 23, 1997, and, while the results have been negative, she is still at risk as the virus has a seven to ten-year latency period. Because of this exposure, appellee dropped her plans for a career in nursing, has suffered post-traumatic stress disorder, severe depression, has been under the care of a psychiatrist, has been prescribed anti-depressants, and her personality has changed from extroverted and optimistic to withdrawn and morbidly pessimistic. The magistrate further noted that appellee has been required to disclose her exposure to prospective employers, health care providers and insurance companies, and, because she has been limited in her work opportunities due to depression and health status, she does not have sustained employment with health care benefits.
 {¶ 27} Based upon the evidence presented at the hearing, the magistrate found that appellee lost her then current job in home health care and a career in nursing, for an economic loss of at least $54,246 in past lost wages, and a future wage loss of $129,826.37. The magistrate also found, based upon the testimony of appellee's treating psychiatrist, that she will require future therapy costs of $36,400, and prescription costs of $8,368.04 for the same period. Finally, the magistrate awarded damages for pain and suffering in the amount of $750,000.
 {¶ 28} In support of its argument that the trial court erred in failing to grant Civ.R. 60(B) relief on the basis of excessive damages, FMF cites Baker v. Hope Moulding Co. (Mar. 25, 1982), Hardin App. No. 6-81-10, quoting 47 American Jurisprudence 2d 206, for the proposition that "`[i]n a tort action, or in any action for unliquidated damages, the default of the defendant does not admit the amount of the damages, and the plaintiff must prove his damages.'" In Baker, however, the trial court awarded unliquidated damages without a hearing. As noted above, the magistrate in the instant case conducted a damages hearing.
 {¶ 29} Further, a review of the record indicates that FMF did not raise the issue of excessive damages before the trial court in the Civ.R. 60(B) motion, and, as a result, the trial court never addressed it. Issues not properly before a reviewing court are deemed waived on appeal. Natl. City Bank v. ConcordeControls, Inc., Lake App. No. 2001-L-113, 2002-Ohio-6578, at ¶ 28. Moreover, appellee notes, and we agree, that the Baker
decision cited by FMF in fact supports the action of the trial court in the instant case, as in Baker the defendants "at no time before the trial court claimed any such defense to the complaint and the default judgment rendered thereon." Id. Under those circumstances, the court in Baker concluded that the appellants failed to demonstrate they had a meritorious defense to present if the default judgment were vacated. Similarly, in the instant case, FMF has not shown that the trial court abused its discretion in failing to conclude FMF had a meritorious defense based on the amount of the damage award.
 {¶ 30} FMF next argues that the trial court erred in failing to find that its neglect was excusable. FMF maintains that its action did not exhibit a complete disregard for the judicial system, as it relied upon recognized case law in failing to answer appellee's complaint.
 {¶ 31} The trial court, in addressing the issue of excusable neglect, noted: "It has always been [FMF's] position that it was not required to do much to rectify the confusion over the name of the proper entity, as it is `Plaintiff's burden to sue the proper Defendant.'" The trial court further noted, however, that the Ohio Supreme Court, in Bright II, disagreed with FMF's position, holding that a plaintiff may commence an action against a party named only by its fictitious name under R.C. 1329.10(C).
 {¶ 32} In Bright II, at ¶ 13-14, the Ohio Supreme Court further held, in relevant part:
* * * Despite repeated inquiries by Bright's attorneys prior to filing the action, they were unable to identify the legal entity behind the Practice Center. They examined filings with the Secretary of State to determine if the Practice Center was a registered trade name or a reported fictitious name and reviewed medical records and billing statements of the Practice Center. These actions failed to pinpoint FMF as the legal entity behind the Practice Center.
Moreover, the evidence clearly indicates that FMF had notice of the commencement of Bright's suit. A receptionist at the Practice Center, who was an employee of FMF, received service of Bright's complaint. Despite this fact, and as the trial court found, FMF did not take adequate steps to apprise appellants of FMF's connection to the Practice Center. In light of the fact that FMF knew that its rights could be affected by the action, we find it difficult to understand how it can now cry foul and allege that the judgment is void. In these circumstances, an entity should not be permitted to dodge liability.
 {¶ 33} The trial court, citing portions of the above language by the Ohio Supreme Court, found unpersuasive FMF's claim of excusable neglect.
 {¶ 34} In arguing that it demonstrated excusable neglect, FMF contends that, at the time appellee filed her lawsuit, the existing law provided that "a suit cannot be commenced or maintained against the user of a fictitious name when such suit is brought solely in the fictitious name." Bright I.
 {¶ 35} Responding to FMF's reliance upon this court's decision in Bright I, appellee points out the fact that BrightI, which was later reversed by the Ohio Supreme Court, had not been decided at the time appellee commenced her suit. On this point, FMF's argument that its interpretation of the law was reasonable at the time, even though later proven mistaken, is belied by a review of case law in existence prior to this action. Specifically, in its decision in Bright II, the Ohio Supreme Court noted that appellate decisions by "both the Eighth and Ninth District Courts of Appeals have concluded that R.C.1329.10(C) permits suits against parties named only by their fictitious names." Bright II, at ¶ 11, citing Martin v.Bedroom Emporium (Dec. 24, 1997), Summit App. No. 18509, andZinn v. Pine Haven, Inc. (Aug. 12, 1982), Tuscarawas App. No. 1578. Additionally, this court previously had occasion to construe R.C. 1329.10(C), holding that a plaintiff properly brought suit against a corporation under a trade name. SeeKennedy v. Coaxial Communications (Jan. 22, 1987), Franklin App. No. 86AP-693.
 {¶ 36} In the present case, as found by the Ohio Supreme Court in Bright II, FMF had notice of the commencement of appellee's suit but took no steps to apprise appellee of its connection to the Practice Center. Under these circumstances, we do not find that FMF's belief it was not required to act, based upon its interpretation of existing law, constituted excusable neglect. See Natl. City Bank v. Poling, Franklin App. No. 04AP-711, 2005-Ohio-585, at ¶ 13 (appellant's failure to interpose an answer based upon an erroneous interpretation of federal law not excusable neglect: "Ignorance of the law is not a valid justification for failure to defend an action, and non-attention to a legal matter because of a failure to understand its scope is of no excuse"). Accordingly, we find that the trial court did not abuse its discretion in failing to find excusable neglect.
 {¶ 37} Finally, FMF contends the trial court erred in implicitly denying its common-law motion to vacate a void judgment. More specifically, FMF argues that due process requires that a defendant be served written notice of an application for default judgment seven days prior to the hearing on such application. FMF contends that its counsel made a representation to appellee's counsel indicating FMF's intent to present a defense in the lawsuit. FMF maintains, however, that appellee's counsel filed the motion for default judgment without informing the trial court of FMF's intent to present a defense, and that such action was contrary to Civ.R. 55(A).
 {¶ 38} Civ.R. 55(A) states in part: "If a party against whom judgment by default is sought has appeared in the action, [such party] * * * shall be served with written notice of the application for judgment at least seven days prior to the hearing on such application." Ordinarily, an appearance is made "`when a party comes into court by some overt act of that party that submits a presentation to the court.'" Plant Equip., Inc. v.Nationwide Control Serv., Inc., 155 Ohio App.3d 46,2003-Ohio-5395, at ¶ 7, quoting Alliance Group, Inc. v.Rosenfield (1996), 115 Ohio App.3d 380, 390.
 {¶ 39} As noted, FMF argues that it "appeared" in the action through communications between its counsel and counsel for appellee. FMF relies on case law providing that certain informal contacts between parties, in which a defendant clearly expresses an intention to defend an action, constitutes an appearance for purposes of Civ.R. 55(A). See Miamisburg Motel v. HuntingtonNatl. Bank (1993), 88 Ohio App.3d 117, 126 ("a party appears in the action, and is thus entitled to notice of the application for default judgment, when that party clearly expresses to the opposing party an intention and purpose to defend the suit, regardless of whether a formal filing is made").
 {¶ 40} Attached to FMF's motion to vacate was correspondence in the form of a November 12, 1998 letter from attorney Enders to counsel for appellee. In that letter, Enders requested that counsel for appellee dismiss Enders' client, Dr. Crane. However, Enders made no suggestion that he represented FMF, nor did he indicate to appellee's counsel a clear intent to defend the Practice Center (the party against whom the motion for default judgment was filed); rather, Enders stated: "[T]he Thomas E. Rardin Family Practice * * * is simply the name of the building where the clinic is conducted. That is not a legal entity. Therefore * * * I am not responding for this non-entity." Thus, Enders' communication was based upon his representation of Dr. Crane (as opposed to FMF or the Practice Center), and given Enders' explicit statement he was "not responding" for a non-entity, the trial court was not required to find that counsel's communications rose to the level of an "appearance" on behalf of FMF. See, e.g., Hyway Logistics Serv., Inc. v.Ashcraft (Feb. 2, 2000), Hancock App. No. 5-99-40 (telephone conversation between the defendant and plaintiff's attorney in which defendant expressed his belief it was unnecessary for him to respond to complaint did not constitute an appearance so as to require notice seven days prior to the hearing in which the trial court granted a default judgment).
 {¶ 41} FMF further contends there were other conversations between Enders and counsel for appellee in which Enders indicated his intention to defend FMF in the event appellee's counsel filed an amended complaint naming the proper corporation. We note that FMF's claim regarding such conversations was challenged by appellee in her memorandum contra, via an affidavit by appellee's counsel, N. Gerald DiCuccio. Even assuming there were such private conversations, it has been held that, for purposes of determining whether a party has entered an appearance under Civ.R. 55, "private communication between counsel, not part of the record in the case, is of no legal force or effect[.]"Hrabak v. Collins (1995), 108 Ohio App.3d 117, 124. Further, as previously noted by the Ohio Supreme Court in Bright II, at ¶ 14, FMF had notice of the commencement of the suit but "did not take adequate steps to apprise appellants of FMF's connection to the Practice Center." Under the circumstances of this case, FMF has not shown that the trial court abused its discretion in failing to vacate the judgment on the basis that FMF "appeared" for purposes of Civ.R. 55(A).
 {¶ 42} Based upon the foregoing, FMF's first, second, and third assignments of error are without merit and are overruled, and the judgment of the Franklin County Court of Common Pleas is hereby affirmed.
Judgment affirmed.
Sadler and Travis, JJ., concur.