RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 17a0182p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

MAX GERBOC,

　　　　　　　　　　　*Plaintiff-Appellant,*

　　*v.*

CONTEXTLOGIC, INC.,

　　　　　　　　　　　*Defendant-Appellee.*

No. 16-4734

---

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 1:16-cv-00928—Donald C. Nugent, District Judge.

Argued: August 1, 2017

Decided and Filed: August 16, 2017

Before: CLAY, GRIFFIN, and THAPAR, Circuit Judges.

---

### COUNSEL

**ARGUED:** Nicole T. Fiorelli, DWORKEN & BERNSTEIN CO., L.P.A., Painesville, Ohio, for Appellant. Jeffrey S. Jacobson, KELLEY DRYE & WARREN LLP, New York, New York, for Appellee. **ON BRIEF:** Nicole T. Fiorelli, Patrick J. Perotti, DWORKEN & BERNSTEIN CO., L.P.A., Painesville, Ohio, for Appellant. Jeffrey S. Jacobson, James B. Saylor, KELLEY DRYE & WARREN LLP, New York, New York, Michael J. Zbiegien Jr., TAFT STETTINIUS & HOLLISTER LLP, Cleveland, Ohio, for Appellee.

---

### OPINION

---

THAPAR, Circuit Judge. As best we can tell, Max Gerboc is happy with the $27 speakers he bought from Wish.com. Yet he wants back 90% of what he paid for them.

He does not say that they sound bad, that they are worth less than what he paid, or that he was tricked into buying them. Rather, he thinks that Wish used an unfair advertising ploy to sell them. On the website, the speakers' purchase price was juxtaposed with a different price: $300. But that number was crossed out, implying that Gerboc was getting a good deal. Gerboc now argues that the deal was an illusion, that Wish's ploy violated principles of equity and Ohio law, and that he was entitled to buy the speakers at 90% off their purchase price—or, for about $3.

We disagree and affirm.

I.

The Wish Marketplace—run by the defendant, ContextLogic—is a website that works like a bazaar. Sellers from all over use the platform to hawk their wares, and buyers from all over use the website to buy them. One of those buyers was Max Gerboc. Browsing Wish from his computer in Ohio, he stopped at a pair of portable speakers. Liking the price ($27), he bought them.

Like anyone who bought the ShamWow! after the infomercial, Wish customers could easily think the speakers were a steal. According to ContextLogic, sellers on Wish can include a Manufacturer's Suggested Retail Price, which appears (crossed-out) on a product's "detail page." In this case, Gerboc saw "$300" next to the speakers' purchase price. Gerboc believed the crossed-out price was a promise of a 90% markdown (from $300 to $27). But ContextLogic allegedly never sold the speakers for $300. And when he learned that, Gerboc decided that he never received the discount that Wish had promised. So, he believes he deserves 90% of the $27 he paid.

Gerboc sued ContextLogic in Ohio state court on behalf of himself and a class of similarly situated buyers. Arguing that Wish's price visuals are deceptive, he alleged breach of contract, unjust enrichment, fraud, and violations of the Ohio Consumer Sales Practices Act ("OCSPA"). ContextLogic removed to federal district court under 28 U.S.C. § 1332(d) and moved to dismiss. Gerboc abandoned his contract claim, and the court dismissed his unjust enrichment, fraud, and class OCSPA claims—while allowing his individual OCSPA claim to

proceed.  At Gerboc's request, the court certified its decision for interlocutory appeal.  *See* Fed. R. Civ. P. 54(b).

Just to be safe, Gerboc has also filed a Petition for Permission to Appeal, explaining why we should accept the certification.  Interlocutory appeal is appropriate when a district-court order "involves a controlling question of law," there is "substantial ground for difference of opinion," and an appeals court can "materially advance the ultimate termination of the litigation" by addressing the question itself.  28 U.S.C. § 1292(b); *see also In re City of Memphis*, 293 F.3d 345, 350 (6th Cir. 2002).  Gerboc's arguments about why we should hear his case are essentially the same as why he should win it.  Those arguments are easy enough to resolve, suggesting there might not be "substantial grounds for difference of opinion."  At the same time, this court has not addressed these types of claims under Ohio law.  And other circuits, applying similar statutes from other states, have reached inconsistent results.  *Compare Shaulis v. Nordstrom, Inc.*, — F.3d —, No. 15-2354, 2017 WL 3167619 (1st Cir. July 26, 2017) (Massachusetts law), *with Hinojos v. Kohl's Corp.*, 718 F.3d 1098 (9th Cir. 2013) (California law).  Because Gerboc's procedural and merits arguments blend together, a decision denying this appeal would also read much like a decision denying his claims.  *See* 16 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure: Jurisdiction and Related Matters § 3930 (3d ed. 2017) (Westlaw database) (noting that "explaining confidence in the trial-court order" at times "approach[es] affirmance").  Resolving the questions that the parties have already briefed—rather than asking them to rehash them in later motions and appeals—will therefore "save time for the district court, and time and expense for the litigants."  *Id*.  So we will exercise our discretion and hear this appeal.  *See* 28 U.S.C. § 1292(b).

## II.

We have jurisdiction under the Class Action Fairness Act because the parties are minimally diverse (Gerboc being a citizen of Ohio and ContextLogic one of California and Delaware), the putative class has over a hundred members, and the amount in controversy exceeds five million dollars.  28 U.S.C. § 1332(d)(2)(A), (d)(5)(B); *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 592 (2013).  We review de novo a district court's decision to grant a motion to dismiss and can affirm on any grounds.  *In re Omnicare, Inc. Sec. Litig.*, 769 F.3d 455,

469 (6th Cir. 2014). Though we accept Gerboc's well-pleaded allegations as true, those allegations must give him a plausible—not just speculative—right to relief. *Id.* Mere conclusions, of fact or law, are not enough. *Id.*

A.

Gerboc argues that Wish's deceptive price visuals unjustly enrich ContextLogic at the buyer's expense. Unjust enrichment is "designed to compensate [a] plaintiff for the benefit he has conferred upon another, not to compensate him for a loss suffered." *Wuliger v. Mfrs. Life Ins. Co.*, 567 F.3d 787, 799 (6th Cir. 2009) (quoting *Jones v. Jones*, 903 N.E.2d 329, 337 (Ohio Ct. App. 2008)) (internal quotation mark omitted). As an equitable doctrine, it "prevent[s] a party from retaining money or benefits that in justice and equity belong to another." *Id.* (quoting *Beatley v. Beatley*, 828 N.E.2d 180, 192-93 (Ohio Ct. App. 2005)) (internal quotation mark omitted). But as a quasi-contractual remedy, it does so only "in the absence of an express contract or a contract implied in fact." *Id.* (quoting *Beatley*, 828 N.E.2d at 192) (emphasis omitted). If a contract covers the transaction at issue, the plaintiff does not need equity; he finds his remedy in the contract.

No one disputes that a contract existed between ContextLogic and Gerboc for sale of the speakers. Earlier in the case, Gerboc even argued that ContextLogic had *breached* that contract. *See* Compl. at 10-11. Moreover, the facts that Gerboc has presented establish at least a contract implied in fact. In his complaint he included an image of his receipt, *see id.* at 5, "mak[ing] it reasonably certain that an agreement was intended" to transfer the speakers from the seller's shelves to Gerboc's home, *Stepp v. Freeman*, 694 N.E.2d 510, 514 (Ohio Ct. App. 1997).

Still Gerboc argues that the contract does not preclude his unjust-enrichment claim because the contract never incorporated the promised discount. Because it did not, the argument goes, he may resort to equity. But a party who does not contract for something cannot simply get it through equity. This doctrine applies "in the absence" of a contract, not in the place of one. *Wuliger*, 567 F.3d at 799 (quoting *Beatley*, 828 N.E.2d at 192) (emphasis omitted).

Regardless, Gerboc fails to establish unjust enrichment. ContextLogic was, no doubt, enriched. But making money is still allowed. To prove that ContextLogic made money *unjustly*,

Gerboc must show that (1) he conferred a benefit upon ContextLogic, (2) ContextLogic knew it, and (3) ContextLogic retained the benefit "under circumstances where it would be unjust to do so without payment[.]" *Id.* (quoting *Hambleton v. R.G. Barry Corp.*, 465 N.E.2d 1298, 1302 (Ohio 1984)) (alteration in original) (internal quotation mark omitted). As a buyer, Gerboc conferred a benefit. As a seller, ContextLogic knew it. And as with any normal sale of a good, there was nothing "unjust" about this. There might have been if the speakers were worth less than Gerboc paid. But he has never argued that. So yes, Gerboc enriched ContextLogic for facilitating his purchase. But ContextLogic was not *unjustly* enriched: Gerboc got what he paid for.

For this reason, the Ohio courts rejected Gerboc's theory the last time his counsel brought it on behalf of a client. There the Ohio Court of Appeals wrote that "[r]egardless of the nature of the [advertised] discounts, both [buyers] received the benefit of what they paid for in an arm's-length transaction, so they cannot recover on the basis that it would be unjust to allow [the seller] to retain the purchase price." *Martin v. Lamrite W., Inc.*, 41 N.E.3d 850, 855 (Ohio Ct. App. 2015). *Martin* demonstrates that Ohio courts would decide, as a matter of their own law, that Gerboc has not stated a claim.

The claim also fails as a matter of common sense. To watch one infomercial ("A $90 value for only $19.99!") is to see the Wish model in action. But one does not see this trick only when there is nothing good on television. Even Amazon entices buyers through crossed-out prices. *See, e.g.*, Detail Page for J.D. Vance, *Hillbilly Elegy: A Memoir of a Family and Culture in Crisis* (2016) (juxtaposing the sales price of $16.79 with "List Price: ~~$27.99~~").[1] Deeming this tactic inequitable would change the nature of online, and even in-store, sales dramatically. *See, e.g.*, *Shaulis*, 2017 WL 3167619, at *1 (noting similar tactic at Nordstrom Rack). That, of course, has yet to happen, because Nordstrom Rack and Amazon shoppers get what they pay for.

Gerboc responds that it does not matter whether he got what he paid for because he is not seeking damages, *i.e.*, the difference between what he wanted and what he got. Rather, he seeks

---

[1]*Available at* https://www.amazon.com/Hillbilly-Elegy-Memoir-Family-Culture/dp/0062300547 (last visited Aug. 4, 2017).

restitution, *i.e.*, compensation for giving money to someone who did not deserve it. Restitution is, indeed, the remedy for unjust enrichment. *See, e.g.*, Restatement (Third) of Restitution and Unjust Enrichment § 1 (2011). But to get the remedy he wants, a plaintiff must first prove the elements of the wrong he asserts. Which, as discussed, Gerboc has not done. He does argue, based mainly on California case law, that he deserves restitution as long as he proves one overarching element: "superior equity." Appellant Br. 8. Under *Ohio* law, however, proving "superior equity" requires proving, among other things, that "it would be unjust to [let the seller keep the benefit] without pay[ing the buyer]." *Wuliger*, 567 F.3d at 799 (quoting *Hambleton*, 465 N.E.2d at 1302) (internal quotation mark omitted). Which, again, Gerboc has not done.

B.

Gerboc next asks us to resuscitate his OCSPA claim on behalf of a class of Wish customers. The OCSPA prohibits "unfair or deceptive" sales tactics, like "representing . . . [t]hat a specific price advantage exists, if it does not." Ohio Rev. Code Ann. § 1345.02(A), (B)(8). But not every consumer who has been deceived may bring a class action; first he must prove two elements: notice and injury. Notice is defendant-focused: The consumer must show either that the Ohio Attorney General had already "declared [the seller's practice] to be deceptive or unconscionable" or that an Ohio court had already "determined [the practice] . . . violate[s] [the OCSPA]" before the seller engaged in it. *Id*. § 1345.09(B); *see also Pattie v. Coach, Inc.*, 29 F. Supp. 3d 1051, 1055 (N.D. Ohio 2014). Injury is plaintiff-focused: The consumer must "allege and prove" that he suffered "actual damages" proximately caused by the defendant's deceptive practice. *Felix v. Ganley Chevrolet, Inc.*, 49 N.E.3d 1224, 1231 (Ohio 2015).

Gerboc has shown neither. He failed even to mention the notice rule in his merits brief. He does argue that Wish's price comparisons violate the Ohio Attorney General's regulation on "out-of-store advertising," which prohibits sellers from using newspaper ads, billboards, and the like to publicize discounts that buyers will not actually receive when they walk into the store. Yet by its own terms, this rule applies only to "representation[s] made by a supplier *outside of its interior premises*." Ohio Admin. Code 109:4-3-12(B)(3) (2017) (emphasis added). And Wish, as an online-only marketplace, has no "interior premises." Nor have we seen—or been shown— any cases in which Ohio courts applied this rule to online retailers or otherwise held that

practices like Wish's violate the OCSPA. *See Marrone v. Philip Morris USA, Inc.*, 850 N.E.2d 31, 33 (Ohio 2006) ("[A] consumer may qualify for class-action certification under [OCSPA] only if the defendant's alleged violation . . . is *substantially similar* to an act or practice previously declared to be deceptive[.]" (emphasis added)); *Pattie*, 29 F. Supp. 3d at 1056-57 (finding that Ohio's past out-of-store-advertising cases do not provide "notice" because they are consent decrees and default judgments, not final court determinations); *Ice v. Hobby Lobby Stores, Inc.*, No. 1:14CV744, 2015 WL 5731290, at *3-4 (N.D. Ohio Sept. 29, 2015) (agreeing with *Pattie* and rejecting the cases cited by Gerboc). Even if the "discount" visuals on Wish.com violate the OCSPA, ContextLogic had no notice—because Ohio has yet to brand these discounts (or something substantially similar) as deceptive.

In any event, Gerboc also fails to show damages. "Actual damages," under Ohio law, are "real, substantial, and just damages, or the amount awarded to a complainant in compensation for his actual and real loss or injury." *Whitaker v. M.T. Auto., Inc.*, 855 N.E.2d 825, 831 (Ohio 2006) (quoting *Crow v. Fred Martin Motor Co.*, No. 21128, 2003 WL 1240119, at *7 (Ohio Ct. App. Mar. 19, 2003)) (internal quotation marks omitted). In other words, "damages" means in Ohio what it means anywhere else: To recover damages, a plaintiff must have suffered an injury or loss. *See Mouse v. Cent. Sav. & Trust Co.*, 167 N.E. 868, 871 (Ohio 1929) ("'Actual damages' is a term synonymous with compensatory damages[.]").

Gerboc suffered no loss for the same reason that he did not unjustly enrich ContextLogic. He got what he paid for: a $27 item that was offered as a $27 item and that works like a $27 item. A 90% discount from $27 was not part of the deal; no line struck through the speakers' purchase price, and none of the various website images that Gerboc has attached to his filings mention such a discount. At most, he bargained for the right to have the speakers for 90% less than $300, not the right to have them for that much less than what (even he agrees) they were actually worth. Thus, this claim fails just as it failed when Gerboc's counsel brought it for another plaintiff. *See Ice*, 2015 WL 5731290, at *7 ("Without some allegation that the frame was not worth what he paid, or that he could have obtained a better price in the relevant market, Plaintiff's Complaint fails to allege actual injury in support of his OCSPA class claim[.]");

*accord Shaulis*, 2017 WL 3167619, at *7-8 (rejecting a similar claim under Massachusetts law because the plaintiff "received everything [she] had bargained for").

Granted, if ContextLogic has never sold these speakers for $300, then the discount might have been illusory and the appearance of the discount might have violated the OCSPA. This is a point for Gerboc to litigate on his individual OCSPA claim because there he can recover noneconomic damages. *See* Ohio Rev. Code Ann. § 1345.09(A). But the OCSPA does not entitle a class of Ohio consumers to recover noneconomic damages; it entitles them to recover *actual damages*. *Felix*, 49 N.E.3d at 1230-31. Thus, Gerboc must allege more than a mere violation—he must show that the violation damaged him somehow. *See* Ohio Rev. Code Ann. § 1345.09(B); *Johnson v. Jos. A. Bank Clothiers, Inc.*, No. 2:13-CV-756, 2014 WL 64318, at *9 (S.D. Ohio Jan. 8, 2014) ("Under Ohio law, actual injury is independent of an OCSPA violation and both must be adequately alleged in a class action under [Ohio Rev. Code Ann.] § 1345.09(B)."). He might have satisfied that burden if he had alleged that an illusory discount induced him to buy an item he would not otherwise have bought. *Cf. Hinojos*, 718 F.3d at 1107 (applying this logic under California law). *But cf. Shaulis*, 2017 WL 3167619, at *6-8 (rejecting a similar argument under Massachusetts law). But Gerboc does not so allege. Nor was he harmed because he bought a good at a fair price rather than a pittance.

Gerboc responds that, "under Ohio law, the failure to provide a promised discount" in and of itself "supports a claim for actual damages." Appellant Br. 16. He cites *Crow v. Fred Martin Motor Co.*—but that case is a better contrast than comparison. There, a car dealership promised to drop the price of its cars by $100 for each can of food that a buyer donated (and then failed to honor the promise). No. 21128, 2003 WL 1240119, at *7, *9 (Ohio Ct. App. Mar. 19, 2003). Here, by contrast, ContextLogic charged the buyer exactly the advertised price. To "compensate" Gerboc for his "loss," we would need to force the seller to give up a substantial part of the item's worth. A court could do that if the parties had bargained for that deal. These parties did not.

C.

Gerboc has one more claim: fraud.  But he mentioned it to us just three times in his merits brief and then only in passing.  *See* Appellant Br. 7, 14, 16.  This perfunctory attempt at argument waives this claim.  *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997).

III.

We affirm the judgment of the district court.