[Cite as *Wuerth v. Nationwide Energy Partners, L.L.C.*, 2023-Ohio-3436.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Ronald and Michelle Wuerth et al., | : | |
| Plaintiffs-Appellees, | : | No. 22AP-513 |
| | | (C.P.C. No. 16CV-143) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| Nationwide Energy Partners, L.L.C. c/o West Street Statutory Agent Corp., | : | |
| | : | |
| Defendant-Appellant. | : | |
| | : | |

D E C I S I O N

Rendered on September 26, 2023

**On brief:** *Organ Law LLP, Shawn J. Organ, Erik J. Clark,* and *Connor A. Organ*; *Whitt Sturtevant LLP,* and *Mark A. Whitt*, for appellees. **Argued:** *Erik J. Clark*.

**On brief:** *Vorys, Sater, Seymour* and *Pease LLP, Robert N. Webner, Martha B. Motley*, and *Danielle S. Rice,* for appellant. **Argued:** *Martha B. Motley*.

APPEAL from the Franklin County Court of Common Pleas

LUPER SCHUSTER, J.

{¶ 1} Defendant-appellant, Nationwide Energy Partners, L.L.C. ("NEP"), appeals from a judgment of the Franklin County Court of Common Pleas granting the motion for class certification filed by plaintiffs-appellees, Ronald Wuerth, Michelle Wuerth, David Weller, Amy Fairand, and Ralph Cantore. For the following reasons, we reverse and remand.

## I. Facts and Procedural History

{¶ 2} Pursuant to contracts between NEP and landlords, and between NEP and condominium associations, NEP facilitates the residential delivery of utilities from

American Electric Power and the City of Columbus ("host utilities"). Appellees are either condominium unit owners or apartment tenants whose residences are subject to such contracts. In facilitating this delivery of utilities, NEP provides numerous "submetering" services, including installing utility meters for each residence, operating and maintaining the meters, billing the residents for the quantity of each utility used, and terminating the utility services of defaulting unit owners or tenants. (Compl. at 6.)

{¶ 3} In January 2016, appellees initiated a class action against NEP, alleging violation of Ohio's Consumer Sales Practices Act ("CSPA"). As pertinent to this appeal, appellees asserted NEP unlawfully promoted its submetering services, including deceptively advertising that it charges the same rates as the host utilities. In June 2017, NEP moved for summary judgment on appellees' CSPA claim, arguing the CSPA was inapplicable to the alleged misconduct. One month later, appellees filed a cross-motion for partial summary judgment, seeking an order finding NEP is a "supplier" engaged in "consumer transactions" with appellees under the CSPA. (July 18, 2017 Mot. for Summ. Jgmt. at 1, 20.) In May 2020, the trial court granted appellees' motion and denied NEP's motion. In August 2020, appellees moved for leave to amend their complaint to include an unjust enrichment claim, which the trial court granted. Appellees alleged they confer a benefit on NEP when they pay NEP's utility bills, NEP knowingly retains this benefit, and it is unjust for NEP to retain this benefit.

{¶ 4} In February 2021, appellees filed a motion for class certification. They requested an order certifying the class as: "All residents of condominiums, apartment buildings, and other multifamily developments in Ohio whom NEP billed for electricity, water, or sewer services between January 6, 2010, and the present excluding Plaintiffs' counsel." (Feb. 17, 2021 Mot. for Cert. at 1.) They also requested an order certifying the subclass as: "All residents of condominiums, apartment buildings, and other multifamily developments in Ohio whom NEP billed for 'common area' charges between January 6, 2010, and the present excluding Plaintiffs' counsel." (Mot. for Cert. at 1.)

{¶ 5} Following briefing on the class certification motion, the trial court deferred ruling on the motion and granted appellees leave to file a second amended complaint. In granting this leave, the trial court noted that appellees' memorandum in support of their class certification motion asserted that Ohio Adm.Code 109:4-3-12 provided notice to NEP

that its conduct was deceptive, but appellees did not reference this rule in the first amended complaint. Consequently, the trial court allowed appellees to amend their complaint to include an allegation that this rule provided the notice required under R.C. 1345.09(B) to certify a CSPA class action claim.

{¶ 6} Consistent with the trial court's order, in November 2021, appellees filed a second amended complaint, which included the allegation that Ohio Adm.Code 109:4-3-12 placed NEP on notice that its conduct violated the CSPA. In January 2022, the trial court held a hearing on the pending motion for class certification, and the parties submitted additional briefing as to whether this rule provided prior notice that NEP's conduct violated the CSPA. In August 2022, the trial court granted appellees' motion for class certification.

{¶ 7} NEP timely appeals.

## II. Assignments of Error

{¶ 8} NEP presents the following two assignments of error for our review:

> I. The trial court erred as a matter of law in finding that NEP received clear notice that its conduct was deceptive or unfair based on an Ohio Attorney General Rule.

> II. The trial court erred in finding all of the requirements of Civ.R. 23 were met, because common issues do not predominate over individual issues with respect to whether NEP is liable to Plaintiffs on their Ohio Consumer Sales Practices Act and unjust enrichment claims.

## III. Discussion

{¶ 9} In its first assignment of error, NEP contends the trial court erred in finding an administrative rule gave NEP clear notice that its conduct was deceptive or unfair. NEP's second assignment of error alleges the trial court erred in finding common issues predominate over individual issues as to both appellees' CSPA and unjust enrichment claims. Generally, NEP argues the trial court erred in granting appellees' motion for class certification. These assignments of error have merit.

{¶ 10} "A trial court has broad discretion in deciding whether a class action may be maintained, and that conclusion will not be disturbed absent a showing of an abuse of discretion." *Egbert v. Shamrock Towing, Inc.*, 10th Dist. No. 20AP-266, 2022-Ohio-474, ¶ 14, citing *Marks v. C.P. Chem. Co., Inc.*, 31 Ohio St.3d 200 (1987), syllabus. An abuse of

discretion connotes a decision that is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). But because a trial court "does not have discretion to apply the law incorrectly[,] * * * courts apply a de novo standard when reviewing issues of law." *Johnson v. Abdullah*, 166 Ohio St.3d 427, 2021-Ohio-3304, ¶ 38. *See Lenoir v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 19AP-94, 2020-Ohio-387, ¶ 10 (Citations omitted.) ("Even under an abuse of discretion standard, * * * 'no court has the authority, within its discretion, to commit an error of law.' ").

{¶ 11} "[C]lass-action suits are the exception to the usual rule that litigation is conducted by and on behalf of only the individually named parties." *Felix v. Ganley Chevrolet, Inc.*, 145 Ohio St.3d 329, 2015-Ohio-3430, ¶ 25. In order "[t]o fall within that exception, the party bringing the class action must affirmatively demonstrate compliance with the procedural rules governing class actions." *Id.* Civ.R. 23(A) sets forth the following four prerequisites for certification of a class:

> One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
>
> (1) the class is so numerous that joinder of all members is impracticable,
>
> (2) there are questions of law or fact common to the class,
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and class.
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

Additionally, "it must also be shown the action comes within the purview of at least one of three types of class actions described in Civ.R. 23(B)." *Schmidt v. Avco Corp.*, 15 Ohio St.3d 310, 313 (1984). As pertinent here, Civ.R. 23(B)(3) provides that a class action may be maintained if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

{¶ 12} "[A] party seeking certification pursuant to Civ.R. 23 bears the burden of demonstrating by a preponderance of the evidence that the proposed class meets each of the requirements set forth in the rule." *Cullen v. State Farm Mut. Auto. Ins. Co.*, 137 Ohio St.3d 373, 2013-Ohio-4733, ¶ 15. "A preponderance of the evidence is defined as that measure of proof that convinces the judge or jury that the existence of the fact sought to be proved is more likely than its nonexistence." *State ex rel. Doner v. Zody*, 130 Ohio St.3d 446, 2011-Ohio-6117, ¶ 54. Accordingly, "[t]he trial court must carefully apply the requirements of Civ.R. 23 and conduct a rigorous analysis into whether those requirements have been satisfied." *Egbert* at ¶ 15, citing *Hamilton v. Ohio Savs. Bank*, 82 Ohio St.3d 67, 70 (1998). *See also Madyda v. Ohio Dept. of Pub. Safety*, 10th Dist. No. 20AP-217, 2021-Ohio-956, ¶ 10; *Felix* at ¶ 26; *Cullen* at ¶ 17.

{¶ 13} Ohio courts have held that "[a] 'rigorous analysis' often requires the trial court to 'look * * * into the enmeshed legal and factual issues that are part of the merits of the plaintiff's underlying claims' * * * and 'consider what will have to be proved at trial and whether those matters can be presented by common proof.' " *Madyda* at ¶ 10, quoting *Felix* at ¶ 26, and *Cullen* at ¶ 17, citing 7AA Wright, Miller & Kane, *Federal Practice and Procedure*, Section 1785 (3d Ed.2005). The trial court, however, "may consider the underlying merits of plaintiff's claims only to the extent necessary to determine whether the plaintiff has satisfied the requirements for class certification." *Weiman v. Miami Univ.*, 10th Dist. No. 22AP-36, 2022-Ohio-4294, ¶ 9, citing *Felix* at ¶ 26; *Stammco, L.L.C. v. United Tel. Co. of Ohio*, 136 Ohio St.3d 231, 2013-Ohio-3019, ¶ 44. Further, "[i]n explaining a trial court's duty to conduct a rigorous analysis prior to certifying a class for litigation, the Supreme Court of Ohio has emphasized that the requirements are not ' "a mere pleading standard." ' " *Weiman* at ¶ 9, quoting *Felix* at ¶ 26, quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).

{¶ 14} NEP's first assignment of error only concerns class certification of appellees' CSPA claim. The CSPA prohibits suppliers from committing unfair, deceptive, or unconscionable acts or practices in connection with consumer transactions. *See* R.C. 1345.02 and 1345.03. "[A] consumer may qualify for class-action status only when a supplier acted in the face of prior notice that its conduct was deceptive or unconscionable." *Marrone v. Philip Morris USA, Inc.*, 110 Ohio St.3d 5, 2006-Ohio-2869, ¶ 9, citing R.C.

1345.09(B). To bring a class action under the CSPA, the consumer must also show injury. *Gerboc v. ContextLogic, Inc.*, 867 F.3d 675, 680 (6th Cir.2017). Appellees failed to meet these requirements.

{¶ 15} Notice in this context "is defendant-focused" and "may be in the form of (1) a rule adopted by the Attorney General under R.C. 1345.05(B)(2) or (2) a court decision made available for public inspection by the Attorney General under R.C. 1345.05(A)(3)." *Gerboc* at 680; *Marrone* at ¶ 9. A consumer seeking certification under R.C. 1345.09(B) must specifically inform the trial court of the decision or rule relied upon. *Burdge v. Subvest 4, L.L.C.*, 1st Dist. No. C-060354, 2007-Ohio-1488, ¶ 5.

{¶ 16} Appellees allege Ohio Adm.Code 109:4-3-12 provided prior notice to NEP that its conduct was deceptive.

> This rule is designed to define with reasonable specificity certain circumstances in which a supplier's acts or practices in advertising price comparisons are deceptive and therefore illegal. For purposes of this rule, price comparisons involve a comparison of the present or future price of the subject of a consumer transaction to a reference price, usually as an incentive for consumers to purchase. This rule deals only with out-of-store advertisements as defined in paragraph (B)(3) of this rule. The rule stems from the general principle, codified in division (B) of section 1345.02 of the Revised Code, that it is deceptive for any claimed savings, discount, bargain, or sale not to be genuine, for the prices which are the basis of such comparisons not to be bona fide, genuine prices, and for out-of-store advertisements which indicate price comparisons to create false expectations in the minds of consumers.

Ohio Adm.Code 109:4-3-12(A).

{¶ 17} More specifically, appellees contend NEP was on prior notice that its conduct would violate Ohio Adm.Code 109:4-3-12(G)'s prohibition against deceptive price comparisons. This rule states:

> It is deceptive for a supplier in its out-of-store advertising to make a comparison between the prices of similar, but non-identical goods or services unless:
>
> (1) The non-identical goods or services are of essentially similar quality to the advertised goods or services or the dissimilar

aspects are clearly and conspicuously disclosed in the advertisements; and

(2) The advertisement clearly and conspicuously discloses that non-identical goods or services are being compared; and

(3) Either:

(a) The price comparison is to the regular price of the reference goods or services; or

(b) The nature of the reference price is clearly and conspicuously disclosed; and

(4) Either:

(a) The reference goods or services are available in the supplier's trading area; or

(b) The fact that they are not available is clearly and conspicuously disclosed.

{¶ 18} Appellees assert the record contains evidence that NEP engaged in "out-of-store advertising" with deceptive "price comparisons." (Mot. to Cert. at 27.) We disagree. For the purpose of Ohio Adm.Code 109:4-3-12(G), "[o]ut-of-store advertising" means "any advertisement, message, or representation made by a supplier outside of its interior premises. It includes but is not limited to communications made via newspapers, television, radio, printed brochures, leaflets, fliers, billboards, any online or digital medium, or signs painted on or posted in windows." Ohio Adm.Code 109:4-3-12(B)(3). "Price comparison" or "comparison" means "any representation, however expressed, that a savings, reduction or discount exists or will exist; provided, however, that language which does not reasonably imply a comparison to identifiable prices or items does not express a price comparison." Ohio Adm.Code 109:4-3-12(B)(4). Thus, an advertisement under this rule is one that refers to a purported savings, reduction, or discount relating to the cost or value of what the supplier is selling. *See, e.g.*, *Martin v. Lamrite West, Inc.*, 8th Dist. No. 102251, 2015-Ohio-3585 (finding evidence to support notice under Ohio Adm.Code 109:4-3-12 because the advertised discounts failed to reference the prices to which the discounts applied).

{¶ 19} Although "advertising," for the purpose of Ohio Adm.Code 109:4-3-12(G), is broadly defined to include "any advertisement, message, or representation," such a communication must be "out-of-store." And an "out-of-store" communication under this rule must be "made by a supplier outside of its interior premises." Ohio Adm.Code 109:4-3-12(B)(3). Therefore, Ohio Adm.Code 109:4-3-12(G) has a location component, contrasting a supplier's "out-of-store advertising" with advertising in "its interior premises." That is, the rule does not apply to all advertising; it only applies to "out-of-store advertising" for a supplier that has "interior premises." And the only reasonable reading of this language is that "its interior premises" are the interior of the supplier's "store." As ordinarily understood, a "store" is a retail location where goods, merchandise, or services are offered for sale. Appellees do not allege NEP has a "store." Instead, they rely on the absence of evidence that NEP has an online only business model as allegedly demonstrating NEP engaged in "out-of-store advertising." We are unpersuaded.

{¶ 20} In *Gerboc*, the Sixth Circuit Court of Appeals rejected application of Ohio Adm.Code 109:4-3-12 to price comparisons made on an "online-only marketplace" run by the defendant because such a marketplace has no "interior premises." *Gerboc* at 680. Appellees argue *Gerboc* is distinguishable because, as the trial court found, NEP is not an online-only retailer. According to appellees, NEP's conduct is substantially similar to that found in the cases cited in *Pattie v. Coach, Inc.*, 29 F. Supp.3d 1051, 1057 (N.D.Ohio 2014). The cases cited in *Pattie* "deal with out-of-store advertisements, which either enticed plaintiffs into the defendant's store or lured them into scheduling in-home sales presentations." *Id.* The *Pattie* court noted: "Out-of-store advertisements reach consumers and persuade them to travel to or to enter a retail premises, while in-store advertisements or coupons, handed out after a consumer has already decided to enter a store, do not." *Id.* Thus, these cases address out-of-store cost or value communications intended to influence consumers.

{¶ 21} Contrary to this reasoning, appellees seem to suggest that any communication from a supplier that is not an online only retailer, promoting the sale of its goods or services, is "out-of-store advertising" for the purpose of Ohio Adm.Code 109:4-3-12, regardless of whether the supplier has a physical retail presence. But, as discussed above, this rule presumes the supplier has a store, that is, a physical retail location. Further,

even if "out-of-store advertising" is broadly construed to apply to communications seeking to obtain in-home presentation appointments, appellees do not allege NEP's communications were designed to entice or lure customers into scheduling an in-home sales presentation. In sum, appellees failed to demonstrate Ohio Adm.Code 109:4-3-12 applied because there was no evidence NEP engaged in "out-of-store advertising" as that term is used in this rule. For these reasons, we conclude the trial court erred in finding Ohio Adm.Code 109:4-3-12 provided NEP clear notice that its conduct was deceptive or unfair.[1] For these reasons, we sustain NEP's first assignment of error.

{¶ 22} NEP's second assignment of error concerns whether appellees demonstrated common issues predominate over individual issues as to appellees' CSPA and unjust enrichment claims. Based on our resolution of NEP's first assignment of error, its second assignment of error is moot as to appellees' CSPA claim. Therefore, at issue is whether, as to the unjust enrichment claims, the trial court erred in finding that appellees established Civ.R. 23(B)(3)'s requirement that questions of law or fact common to class members predominate over any questions affecting only individual members.

{¶ 23} The inquiry under Civ.R. 23(B)(3) "requires a court to balance questions common among class members with any dissimilarities between them." *Cullen* at ¶ 29. " 'For common questions of law or fact to predominate, it is not sufficient that such questions merely exist; rather, they must present a significant aspect of the case. Furthermore, they must be capable of resolution for all members in a single adjudication.' " *Id.* at ¶ 30, quoting *Marks*, 31 Ohio St.3d at 204. Accordingly, " ' "[t]o meet the predominance requirement, a plaintiff must establish that issues subject to generalized proof and applicable to the class as a whole predominate over those issues that are subject to only individualized proof." ' " *Id.*, quoting *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 544 (6th Cir.2012), quoting *Randleman v. Fid. Natl. Title Ins. Co.*, 646 F.3d 347, 352-53 (6th Cir.2011), citing *Beattie v. CenturyTel., Inc.*, 511 F.3d 554, 564 (6th Cir.2007).

---

[1] The communications at issue had no reasonable influence on appellees' actions or obligations as to the delivery of utilities. Appellees, as apartment tenants or condominium unit owners, were not in contract with NEP. While appellees were required to pay for the delivered utilities, based on agreements to which they were not privy, the choice as to the means of delivery was not theirs to make. That is, no conduct by NEP induced appellees to choose NEP as the deliverer of utilities to their residences. Thus, appellees failed to demonstrate they sustained actual damages proximately caused by a CSPA violation.

{¶ 24} Appellees argue the trial court correctly found their unjust enrichment claims are predominated by common issues. Unjust enrichment is an equitable claim based on a contract implied in law. *Bunta v. Superior VacuPress, L.L.C.*, ___ Ohio St.3d ___, 2022-Ohio-4363, ¶ 36. "The doctrine of unjust enrichment 'applies [when] a benefit is conferred and it would be inequitable to permit the benefitting party to retain the benefit without compensating the conferring party.' " *Garb-Ko, Inc. v. Benderson*, 10th Dist. No. 12AP-430, 2013-Ohio-1249, ¶ 25, quoting *Meyer v. Chieffo*, 193 Ohio App.3d 51, 2011-Ohio-1670, ¶ 16 (10th Dist.). *Hummel v. Hummel*, 133 Ohio St. 520, 528 (1938) (Unjust enrichment occurs when a person "has and retains money or benefits which in justice and equity belong to another."). The purpose of the unjust enrichment doctrine "is not to compensate the plaintiff for any loss or damage suffered by him but to compensate him for the benefit he has conferred on the defendant." *Hughes v. Oberholtzer*, 162 Ohio St. 330, 335 (1954). To prove an unjust enrichment claim, a plaintiff must demonstrate: (1) the plaintiff conferred a benefit upon the defendant, (2) the defendant knew of the benefit, and (3) it would be unjust to allow the defendant to retain the benefit without repayment to the plaintiff. *Garb-Ko* at ¶ 25.

{¶ 25} "[J]ust because one party has been enriched through a transaction does not alone support a claim for unjust enrichment." *United States Health Practices v. Blake*, 10th Dist. No. 00AP-1002 (Mar. 22, 2001). " 'It is not sufficient for the plaintiffs to show that [they have] conferred a benefit upon the defendants. [Plaintiffs] must go further and show that under the circumstances [they have] a superior equity so that as against [them] it would be unconscionable for the defendants to retain the benefit.' " *Id.*, quoting *Katz v. Banning*, 84 Ohio App.3d 543, 552 (10th Dist.1992). Further, because unjust enrichment is an equitable remedy, this doctrine generally does not apply when a contract exists between the parties covering the same subject. *Pohmer v. JPMorgan Chase Bank, N.A.*, 10th Dist. No. 14AP-429, 2015-Ohio-1229, ¶ 21.

{¶ 26} Appellees allege NEP, while paying commercial rates to the host utilities for electricity and water, charges residential rates (that is, the rates the host utilities charge to residential consumers) to appellees for delivery of these utilities, despite providing inferior benefits and protections to appellees than the host utilities provide to their residential consumers. The unfairness appellees allege primarily derives from comparing the direct

delivery of utilities from the host utilities to end users, and the pricing, obligations, and protections associated with that arrangement, with NEP's submetering service, and the pricing, obligations, and protections under that arrangement. Broadly stated, appellees claim NEP unfairly receives windfall profits by charging the same rates as host utilities, without incurring the costs associated with the benefits, services, or protections that host utilities must provide to residential consumers. They also contend NEP is unjustly enriched by assessing common area usage fees.

{¶ 27} Appellees have failed to show that common issues predominate over individual issues as to their unjust enrichment claims. NEP argues the alleged inequities must be evaluated on an individual basis, with attention given to the differences in the submetering and common area usage terms of the pertinent agreements. In response to this argument, appellees assert that NEP and appellees are not in contractual privity with each other, and thus their unjust enrichment claims are not precluded based on the existence of any express contract. They also assert NEP uniformly delivers a message that the rates it charges for the delivery of utilities are the same as charged by host utilities. These assertions may be true, but appellees do not counter NEP's contention that the contracts between it and condominium associations and landlords, between the condominium associations and unit owners, and between the landlords and tenants, do not uniformly address NEP's submetering services, and therefore require individualized review. In the trial court, NEP submitted evidence indicating that NEP's contracts with property owners are negotiated separately and contain different language as to submetering. Similarly, NEP submitted evidence showing properties differ in what common area amenities (pools, exercise rooms, etc.) are available for resident usage, property owners differ in how they allocate common area usage charges to residences, and leases and condominium agreements have different language relating to NEP's submetering services. Different facts require different analyses in weighing the equities. Thus, even in the absence of contractual privity between NEP and appellees, and even with evidence that NEP uniformly represents the rates it charges for the delivery of utilities, the relationships between appellees and NEP concerning NEP's submetering services are framed by contracts that contain varying language relevant to this issue. Based on the individualized inquiries necessary to review the alleged inequities under the circumstances,

the trial court erred in granting appellees' class certification request as to the unjust enrichment claims.

{¶ 28} Accordingly, NEP's second assignment of error is sustained in part and found moot in part.

## IV. Disposition

{¶ 29} Having sustained NEP's first assignment of error in toto, second assignment of error in part, and rendered moot in part, we reverse the judgment of the Franklin County Court of Common Pleas and remand this matter to that court for further proceedings consistent with law and this decision.

*Judgment reversed*;
*cause remanded.*

DORRIAN and MENTEL, JJ., concur.