[Cite as *Wuerth v. Nationwide Energy Partners, L.L.C.*, 2025-Ohio-4810.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Ronald and Michelle Wuerth et al., | : | |
| Plaintiffs-Appellants, | : | |
| | : | No. 24AP-660 |
| v. | : | (C.P.C. No. 16CV-143) |
| Nationwide Energy Partners, LLC c/o West Street Statutory Agent Corp., | : | (REGULAR CALENDAR) |
| | : | |
| Defendant-Appellee. | : | |
| | : | |

D E C I S I O N

Rendered on October 21, 2025

**On brief:** *Whitt Sturtevant LLP*, and *Mark A. Whitt*; *Organ Law LLP*, *Shawn J. Organ*, and *Connor A. Organ*, for appellants. **Argued:** *Mark A. Whitt*.

**On brief:** *Vorys, Sater, Seymour and Pease LLP*, *Robert N. Webner*, and *Martha Brewer Motley*, for appellee. **Argued:** *Martha Brewer Motley*.

APPEAL from the Franklin County Court of Common Pleas

DORRIAN, J.

{¶ 1} Plaintiffs-appellants, Ronald Wuerth, Michelle Wuerth, David Weller, Amy Fairland, and Ralph Cantore appeal from a judgment of the Franklin County Court of Common Pleas granting the motion for summary judgment filed by defendant-appellee, Nationwide Energy Partners, LLC ("NEP"). For the following reasons, we affirm.

## I. Facts and Procedural History

{¶ 2} This case was previously before this court on an appeal of a class certification decision. *Wuerth v. Nationwide Energy Partners, L.L.C.*, 2023-Ohio-3436 (10th Dist.) ("*Wuerth I*"). In *Wuerth I*, this court reversed the trial court's decision to certify a class

action and remanded for further proceedings. *Id.* at ¶ 29. We summarized the case background, also relevant here, as follows:

> Pursuant to contracts between NEP and landlords, and between NEP and condominium associations, NEP facilitates the residential delivery of utilities from American Electric Power and the City of Columbus ("host utilities"). [Appellants] are either condominium unit owners or apartment tenants whose residences are subject to such contracts. In facilitating this delivery of utilities, NEP provides numerous "submetering" services, including installing utility meters for each residence, operating and maintaining the meters, billing the residents for the quantity of each utility used, and terminating the utility services of defaulting unit owners or tenants. (Compl. at 6.)
>
> In January 2016, [appellants] initiated a class action against NEP, alleging violation of Ohio's Consumer Sales Practices Act ("CSPA"). As pertinent to this appeal, [appellants] asserted NEP unlawfully promoted its submetering services, including deceptively advertising that it charges the same rates as the host utilities. In June 2017, NEP moved for summary judgment on [appellants'] CSPA claim, arguing the CSPA was inapplicable to the alleged misconduct. One month later, [appellants] filed a cross-motion for partial summary judgment, seeking an order finding NEP is a "supplier" engaged in "consumer transactions" with [appellants] under the CSPA. (July 18, 2017 Mot. for Summ. Jgmt. at 1, 20.) In May 2020, the trial court granted [appellants'] motion and denied NEP's motion. In August 2020, [appellants] moved for leave to amend their complaint to include an unjust enrichment claim, which the trial court granted. [Appellants] alleged they confer a benefit on NEP when they pay NEP's utility bills, NEP knowingly retains this benefit, and it is unjust for NEP to retain this benefit.

*Id.* at ¶ 2-3.

{¶ 3} Following the remand ordered in *Wuerth I*, NEP moved for summary judgment on appellants' individual claims. Appellants moved to certify a class specific to their claim for unjust enrichment.

{¶ 4} The trial court granted NEP's motion for summary judgment on appellants' individual claims for violation of the CSPA and for unjust enrichment. As a result of the summary judgment determination, the trial court denied as moot appellants' request to certify a different class.

## II. Assignments of Error

{¶ 5} Appellants appeal and assign the following two assignments of error for our review:

> [I.] The trial court erred by granting summary judgment in Defendant's favor on all claims alleged under the Ohio Consumer Sales Practices Act, R.C. 1345.01, *et seq.*

> [II.] The trial court erred by granting summary judgment in Defendant's favor on Plaintiffs' unjust enrichment claim.

## III. Discussion

{¶ 6} A grant of summary judgment is reviewed on appeal under a de novo standard. *Capella III, L.L.C. v. Wilcox*, 2010-Ohio-4746, ¶ 16 (10th Dist.), citing *Andersen v. Highland House Co.*, 2001-Ohio-1607, ¶ 5. "[D]e novo appellate review means that the court of appeals independently reviews the record and affords no deference to the trial court's decision." (Internal quotations deleted and citations omitted.) *Holt v. State*, 2010-Ohio-6529, ¶ 9 (10th Dist.). Summary judgment is appropriate where "the moving party demonstrates that: (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made." *Capella III, L.L.C.* at ¶ 16, citing *Gilbert v. Summit Cty.*, 2004-Ohio-7108, ¶ 6. In ruling on a motion for summary judgment, the court must resolve all doubts and construe the evidence in favor of the nonmoving party. *Pilz v. Ohio Dept. of Rehab. & Corr.*, 2004-Ohio-4040, ¶ 8 (10th Dist.).

{¶ 7} As an initial matter, the parties dispute the effect on this appeal of two prior decisions in the litigation: (1) the trial court's May 6, 2020 summary judgment decision; and (2) this court's decision on class certification in *Wuerth I*. First, in its May 2020 summary judgment decision, the trial court concluded that NEP was a "supplier" and that a "consumer transaction" was involved, thereby allowing appellants' CSPA claim to proceed. (May 6, 2020 Decision & Entry at 10.) Appellants argue that Civ.R. 56(D) and the law-of-the-case doctrine require that the proceedings progress with those facts deemed established here. In response, NEP argues that those conclusions were incorrect and this court can revisit those conclusions. We start from the same place the trial court did here and assume without deciding that the findings made in the May 2020 decision are not in

dispute. Therefore, we focus our analysis regarding appellants' first assignment of error on whether there remains a genuine issue of material fact that NEP's conduct was unfair, deceptive, or unconscionable in violation of the CSPA.

{¶ 8} Secondly, in *Wuerth I*, this court included the following footnote:

> The communications at issue had no reasonable influence on [appellants'] actions or obligations as to the delivery of utilities. [Appellants,] as apartment tenants or condominium unit owners, were not in contract with NEP. While [appellants] were required to pay for the delivered utilities, based on agreements to which they were not privy, the choice as to the means of delivery was not theirs to make. That is, no conduct by NEP induced [appellants] to choose NEP as the deliverer of utilities to their residences. Thus, [appellants] failed to demonstrate they sustained actual damages proximately caused by a CSPA violation.

*Wuerth I*, 2023-Ohio-3436, at ¶ 21, fn. 1 (10th Dist.). Appellants argue that this footnote did not make any conclusions relevant to the summary judgment decision now on appeal. In response, NEP notes that the trial court did not cite or rely on this footnote in its summary judgment decision. Thus, it appears the parties may agree the footnote language is of limited or no value in this appeal. Nonetheless, for the sake of clarity, we note that the court's decision in *Wuerth I* was relevant to the question of class certification on appellants' claims. Here, however, we are reviewing the trial court's summary judgment decision on whether these claims should proceed on an individual basis, not as a class. That distinction is relevant because R.C. 1345.09 identifies different requirements for and remedies available to class claims under the CSPA, including, for example, that class plaintiffs under the CSPA allege and prove that they suffered actual damages. *See Martin v. Lamrite W., Inc.*, 2017-Ohio-8170, ¶ 18 (8th Dist.). Because this appeal is focused on appellants' individual claims, we do not find the referenced footnote in *Wuerth I* to be informative to or dispositive of the issues presented here.

{¶ 9} Turning back to the first assignment of error, appellants argue that the trial court misapplied the CSPA by incorrectly focusing only on whether NEP's actions were "false and material" while failing to analyze whether the actions were unfair or unconscionable. (Appellants' Brief at 17.)

{¶ 10} R.C. 1345.02(A) provides, in relevant part, "No supplier shall commit an unfair or deceptive act or practice in connection with a consumer transaction."

R.C. 1345.02(B) contains a non-exhaustive list of practices defined as "unfair" or "deceptive."

{¶ 11} R.C. 1345.03(A) provides, in relevant part, "No supplier shall commit an unconscionable act or practice in connection with a consumer transaction." R.C. 1345.03(B) contains a list of circumstances to consider in determining whether an act or practice is unconscionable.

{¶ 12} Here, the trial court explained as follows: "To succeed on its CSPA claim, the Plaintiffs must prove that NEP engaged in conduct that was both false and material to the Plaintiffs' decision to purchase commodities from NEP." (Sept. 27, 2024 Decision & Entry at 13.) Appellants argue that this standard as stated by the trial court is incomplete because the false and material description is only relevant to whether the alleged conduct is deceptive and not whether it is unfair or unconscionable. NEP argues in response that this is the first time appellants have raised this argument and the first time that appellants have argued that NEP's acts also constitute unfair or unconscionable conduct. NEP also argues that appellants have presented no evidence to demonstrate the existence of a genuine issue of material fact on their CSPA claim.

{¶ 13} The trial court stated that, "[f]or conduct to be deceptive under the CSPA, it must be both false and material to the consumer transaction." (Sept. 27, 2024 Decision & Entry at 13, citing *Anderson v. Discount Drug Mart, Inc.*, 2021-Ohio-693, ¶ 30 (8th Dist.), *Grgat v. Giant Eagle, Inc.*, 2019-Ohio-4582, ¶ 16 (8th Dist.), and *Lester v. FCA US L.L.C.*, 2022-Ohio-1776, ¶ 37 (1st Dist.).) The trial court then focused its analysis on the element of materiality and found that the evidence did "not support that NEP's conduct was material to the parties' transactions." (Sept. 27, 2024 Decision & Entry at 13.) The trial court pointed to several facts relevant to its conclusion; specifically, that NEP had no contact with appellants prior to them becoming tenants or condominium owners and that NEP's Commodity Coordination Service Agreements ("CCSAs") were with the landlords and property owners rather than the individual appellants; testimony by each appellant that the identity of the utility provider was not something considered in whether to rent or purchase their residence; and, testimony from appellants acknowledging they had no authority to choose a utility provider. (Sept. 27, 2024 Decision & Entry at 14.) Based on the foregoing evidence, the trial court found that NEP could not have influenced appellants to purchase

utilities from them, and, therefore, NEP was entitled to judgment as a matter of law on appellants' CSPA claim.

{¶ 14} We agree with appellants that the elements of falsity and materiality are generally relevant to whether that act or conduct is deceptive under R.C. 1345.02. *See Davis v. Byers Volvo*, 2012-Ohio-882, ¶ 29 (4th Dist.) (concluding that "a deceptive act contains two elements: (1) falsity; and (2) materiality"); *Cranford v. Joseph Airport Toyota, Inc.*, 1996 Ohio App. LEXIS 2252, *5-6 (2d Dist. May 17, 1996) ("In order to be deceptive, and therefore actionable, a seller's act must not only be at variance with the truth but must also concern a matter that is or is likely to be material to a consumer's decision to purchase the product or service involved."). However, we also agree with NEP that appellants have not presented evidence to show the existence of a genuine dispute of material fact regarding the materiality element in order to sustain a claim that NEP's allegedly deceptive acts violated R.C. 1345.02.

{¶ 15} Nonetheless, we recognize that appellants also allege in their complaint that NEP engaged in unfair and unconscionable conduct. The complaint does not identify which alleged conduct is which—instead, it lists multiple acts that appellants contend constitute "unfair, deceptive, and unconscionable sales practices in the course of supplying or arranging for the supply of electric[.]" (Second Am. Compl. at ¶ 57.) More specifically, appellants allege that NEP committed "unfair, deceptive, and unconscionable sales practices in the course of supplying or arranging for" services, including:

- falsely representing that it is a public utility,

- failing to disclose the rates that it charges,

- falsely representing that it charges the same rates as the "host" utility with whom it is working,

- unfairly timing its bills and account credits so as to maximize consumers' late fees,

- including terms in its contracts giving it the right to evict consumers from their apartments and place liens on their homes for nonpayment of utility bills,

- falsely representing that its transactions with customers have uses or benefits that they do not have,

- falsely representing the circumstances under which electric, gas, water, and sewer services were supplied to consumers,

- falsely representing that its electric, gas, water, and sewer services provided a specific price advantage,

- representing that NEP has a sponsorship, approval, or affiliation that it does not have, and

- committing other unfair, deceptive and unconscionable practices to be proven at trial.

(Second Am. Compl. at ¶ 57.) The complaint further alleges, "These actions have had the tendency or capacity to mislead NEP customers regarding the terms and conditions of their relationships with NEP, with the content and trustworthiness of NEP's bills and billing rates, and with their expectations regarding payment of those bills." (Second Am. Compl. at ¶ 58.)

{¶ 16} In their brief, appellants argue that the lack of choice appellants had regarding NEP's submetering services is too limited a question regarding whether NEP committed deceptive practices because they also allege that NEP committed deceptive, unfair, and unconscionable acts and practices during and after the commencement of services. Appellants further argue that "NEP orchestrated the arrangement by essentially bribing Plaintiffs' landlords or condominium developer to sign a CCSA, and to present leases and condominium documents to Plaintiffs that conceal NEP's role as the utility provider." (Appellants' Brief at 21-22.) Appellants contend they are not required to show "that they were induced or misled by NEP to enter these transactions" because the conduct is unfair and unconscionable. (Appellants' Brief at 22.)

{¶ 17} The CSPA generally defines unfair or deceptive consumer sales practices "as those that mislead consumers about the nature of the product they are receiving." *See Johnson v. Microsoft Corp.*, 2005-Ohio-4985, ¶ 24. Based on that description, it seems that appellants have generally alleged that NEP committed unfair or deceptive consumer sales practices. Additionally, of the nine specific acts described above, six identify NEP making a false representation and, therefore, presumably fall into the category of deceptive conduct. The remaining three categories of conduct described in the complaint—failing to disclose rates, unfairly timing bills to maximize late fees, and including contract terms for the right to evict consumers or place liens on their homes—presumably identify an allegedly unfair or unconscionable act given that no element of falsity is involved.

{¶ 18} Unconscionable acts or practices are generally described as those that "relate to a supplier manipulating a consumer's understanding of the nature of the transaction at issue." *Johnson* at ¶ 24. We do not find that appellants have cited any specific evidence in the record demonstrating that NEP's conduct manipulated appellants' understanding of the nature of the transaction. Additionally, R.C. 1345.03(B) describes circumstances that should be taken into consideration in determining whether a supplier's act or practice is unconscionable. Appellants do not cite to or describe what facts present in this case fit into these enumerated circumstances.

{¶ 19} Even accepting that appellants' allegations describe not just deceptive conduct, but also unfair and unconscionable consumer sales practices, and regardless of what standard applies to whether the acts are unfair, deceptive, or unconscionable, appellants have cited no specific evidence to support their claims and establish a genuine issue of material fact. "Whether a particular act or practice is deceptive is ordinarily an issue of fact; however, 'when the evidence plainly reveals that a reasonable jury could not find that the act or practice misled a reasonable consumer, . . . whether a defendant engaged in a deceptive act or practice may be determined as a matter of law.' " *Anderson*, 2021-Ohio-693, at ¶ 32 (8th Dist.), quoting *Davis*, 2012-Ohio-882, at ¶ 27 (4th Dist.).

{¶ 20} In support of its summary judgment motion, NEP submitted an affidavit from its Vice President of Corporate Affairs, copies of its CCSAs with the subject properties, excerpts from depositions of its corporate representatives as well as the individual appellants, and copies of the leases or condominium association documents to which appellants were subject. In their opposition to NEP's motion for summary judgment, appellants submitted no supporting evidence nor did they point to specific evidence in the record supporting their position or rebutting NEP's position. Appellants must produce more than allegations and conclusory statements to survive summary judgment. "In order to defeat summary judgment, the nonmoving party may not rest upon the mere allegations or denials of the party's pleadings," citing Civ.R. 56(E), but rather, "must respond with

evidence of the type listed in Civ.R. 56(C) that demonstrates a genuine issue of material fact exists for trial." *Taylor v. XRG, Inc.*, 2007-Ohio-3209, ¶ 21 (10th Dist.).[1]

{¶ 21} Based on the foregoing, we do not find there remains a genuine issue of material fact regarding whether NEP has committed unfair, deceptive, or unconscionable acts or practices in violation of the CSPA. Accordingly, we overrule appellants' first assignment of error.

{¶ 22} In their second assignment of error, appellants argue that the trial court's legal and factual findings contradict the law of the case and the law on unjust enrichment generally.

{¶ 23} "The elements of an unjust enrichment claim are: (1) a benefit conferred by a plaintiff upon a defendant, (2) knowledge by the defendant of the benefit, and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment." *Liberty Mut. Ins. Co. v. Three-C Body Shop, Inc.*, 2020-Ohio-2694 ¶ 10 (10th Dist.). Where an express contract covers the subject matter, Ohio law generally bars an unjust enrichment claim. *Scott v. First Choice Auto Clinic, Inc.*, 2023-Ohio-3855, ¶ 21 (10th Dist.).

{¶ 24} Here, the trial court first addressed NEP's argument that appellants' unjust enrichment claims were barred because its contracts with the property owners and landlords addressed the same subject matter. The trial court rejected this argument, concluding that the categorical bar did not apply because appellants were not parties to the subject contracts, the CCSAs.

{¶ 25} The trial court next addressed NEP's argument that appellants had not demonstrated any evidence to support the third element of unjust enrichment, that it had unjustly retained a benefit. The trial court noted that NEP had presented evidence in support of its summary judgment motion sufficient to demonstrate that any benefit it received was not unjustly retained, but that appellants presented no evidence in response to support their position and instead relied on the allegations in their complaint.

---

[1] Civ.R. 56(C) states in relevant part, "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

{¶ 26} Appellants argue that the trial court misunderstood the nature of appellants' unjust enrichment claim because they did not allege that NEP overcharged them.[2] Instead, appellants contend their claim is based on their assertion that NEP receives windfall profits by charging appellants the *same* rate as host utility customers would pay. However, appellants point to no evidence to support this claim. Furthermore, even if appellants demonstrated that NEP retained windfall profits,[3] appellants have failed to cite any evidence to demonstrate how that results in a benefit *unjustly* retained. In addition to a conferred benefit, appellants must also show it would be unconscionable for NEP to retain the benefit. *See United States Health Practices, Inc. v. Blake*, 2001 Ohio App. LEXIS 1291, *6 (10th Dist. Mar. 22, 2001); *Katz v. Banning,* 84 Ohio App.3d 543, 552 (10th Dist. 1992); *Cincinnati v. Fox*, 71 Ohio App. 233, 239 (1943). Borrowing from the statutory circumstances of unconscionability enumerated in R.C. 1345.03(B) for purposes of determining whether an act or practice is unconscionable for purposes of the CSPA, charging a price "substantially in excess of the price at which similar. . . services were readily obtainable," might constitute an unconscionable retention of a benefit. But aside from allegations and references to NEP's business model, appellants have pointed to no evidence demonstrating substantially excessive bills or to rebut NEP's reliance on evidence that appellants have not compared their bills to what they might be charged as a host utility customer.

{¶ 27} Appellants also argue that NEP does not provide the same benefits and services available to direct customers of the utilities. But appellants point to no evidence in support. NEP, on the other hand, submitted an affidavit from its Vice President of

---

[2] Appellants' complaint includes allegations that seem to imply it is alleging that NEP is overcharging its customers. For example, appellants allege that NEP's website falsely states that NEP charges the same rates as charged by a utility provider and that customers will not pay a higher rate as an NEP customer. (Second Am. Compl. at ¶ 43.) Appellants also allege that NEP double bills some customers for usage and that the rates NEP charges reflect costs it does not incur. (Second Am. Compl. at ¶ 46, 67.) But in their brief, appellants state, "[p]laintiffs do not contend they were 'overcharged' by paying higher rates than host utility customers. They allege that paying the '*same rates*' results in an underserved [sic] windfall to NEP." (Emphasis in original.) (Appellants' Brief at 27, citing *Wuerth I*, 2023-Ohio-3436, at ¶ 26 (10th Dist.).)

[3] "Windfall" is defined as "[a]n unanticipated benefit, usu. in the form of a profit and not caused by the recipient." *Black's Law Dictionary* (12th Ed. 2024). Here, appellants appear to suggest that NEP reaps "windfall profits" from receiving more for its services than what it bears in costs, but they have not alleged that NEP is receiving something unanticipated outside the contractual arrangement that it bargained for through the CCSAs.

Corporate Affairs that outlines the various services it provides and describes how benefits like cost savings are passed on to the customers. Appellants have not rebutted this evidence and have, instead, relied on conclusory statements or dodging arguments.[4] Even if it were not in dispute that NEP provided a different level of benefits or services, a difference in services does not alone establish the unconscionable retention of a benefit conferred on NEP.

{¶ 28} Although appellants make numerous and varied arguments in support of their unjust enrichment claim, the bottom line remains that appellants have cited no evidence to support their assertions or to rebut NEP's evidence presented in support of summary judgment.

{¶ 29} Based on the foregoing, we find that appellants have not demonstrated the existence of a genuine dispute of material fact relevant to their unjust enrichment claim. Accordingly, we overrule appellants' second assignment of error.

## IV. Conclusion

{¶ 30} Based on the foregoing, we conclude that summary judgment in favor of NEP was properly awarded in this case. Therefore, we overrule appellants' first and second assignments of error and affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

EDELSTEIN and DINGUS, JJ., concur.

---

[4] For example, appellants argue on the one hand that they are paying "Porsche prices for Pontiac services[.]" (Appellants' Brief at 46.) This is consistent with appellants' allegations in support of their unjust enrichment claim that NEP retains a benefit that "vastly exceeds the value of the services NEP provides" and that it charges costs for services and benefits it does not provide. (Second Am. Compl. at ¶ 67.) But, in their brief on appeal, appellants also argue that, even if NEP provided identical services as what host utility customers receive, there is still an unjust enrichment problem because appellants are forced to purchase something they would be entitled to purchase elsewhere. (Appellants' Brief at 47.)